THEODORE GUMLEY & others *vs.* BOARD OF SELECTMEN OF NANTUCKET & another.[1]

Nantucket.    November 3, 1976. — January 13, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, & WILKINS, JJ.

*Historic District Commissions,* Decision, Appeal. *Nantucket. Practice, Civil,* Historic district appeal.

This court declined to consider a claim by defendants in a civil action that the complaint should be dismissed on the ground that the plaintiffs specifically reserved all claims they had in a Federal court under the provisions of 42 U.S.C. §§ 1983 and 1985 (3) where the defendants did not seek dismissal on that ground in the Superior Court. [721-722]

---

[1] Historic District Commission, Nantucket.

A decision by an Historic District Commission under St. 1970, c. 395, as amended by St. 1972, c. 708, would not be disturbed unless it was based on a legally untenable ground, or was unreasonable, whimsical, capricious or arbitrary. [722-724]

An Historic District Commission exceeded its authority under St. 1970, c. 395, as amended by St. 1972, c. 708, in rejecting a residential development on the ground that it would interfere with the "open space" aspect of the district; in the circumstances, however, it was error for a judge to order the commission to issue the certificates applied for. [724-725]

Under the provisions of § 9 (*b*) of St. 1970, c. 395, as amended by St. 1972, c. 708, an Historic District Commission had the authority to consider the length of buildings proposed in a residential development plan. [725]

CIVIL ACTION commenced in the Superior Court on August 20, 1974.

The case was heard by *Vallely,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Charles A. Goglia, Jr.,* Town Counsel, for the Board of Selectmen of Nantucket & another.

*Leonard E. Perry* for the plaintiffs.

BRAUCHER, J. Questions are presented under the statute establishing a Historic Nantucket District. St. 1970, c. 395, as amended by St. 1972, c. 708 (the statute). We read the statute in the light of the more general statutes providing for zoning, G. L. c. 40A, and for historic districts, G. L. c. 40C, and apply a standard of review analogous to that governing exercise of the power to grant or deny special permits. See *MacGibbon* v. *Board of Appeals of Duxbury,* 356 Mass. 635, 638-639 (1970). We affirm the judgment of the Superior Court so far as it annuls the decisions of the Historic District Commission (commission) and the board of selectmen (board), but we reverse the order that certificates of appropriateness be issued to the plaintiffs. We further hold that the commission may properly consider the length of buildings, and order the case remanded for further proceedings before the commission.

We summarize the findings of the Superior Court judge.

Legislation enacted in 1955 established two historic districts on the island of Nantucket, the Old and Historic Nantucket District and the Old and Historic Siasconset District. St. 1955, c. 601, § 3. See *Opinion of the Justices,* 333 Mass. 773 (1955). A master plan for the town of Nantucket was prepared in 1970. At that time the only controls over land use were subdivision regulations administered by the planning board and historic district regulations administered by the commission. The 1970 statute expanded the historic districts to cover the entire island. A zoning by-law was enacted in 1972.

The plaintiffs are present and former owners of a twenty-three acre parcel of land in an open area about 1.6 miles from the Old and Historic Nantucket District in the direction of Siasconset. In 1972 the commission issued a certificate of appropriateness for two buildings on the parcel. Those buildings were part of a plan for 100 multi-family dwelling units, but the owner requested certificates for only two buildings because the certificates were valid for only twelve months, and he intended to build only two buildings as models during the year. Building permits were denied by the building inspector because of alleged zoning violations, but the Superior Court judge ruled that because of an effective subdivision plan the parcel was not subject to zoning regulations. After that decision the building inspector still refused to issue building permits until a peremptory writ of mandamus issued in June, 1974. But the buildings were not built.

One of the present owners, an architect, prepared a revised design, based on the architecture of Siasconset fishing village dwellings, to make the development more indigenous, making extensive use of the commission's guidebook. The revised design and modifications of it were the subject of meetings of the commission on April 9, April 16, April 30, May 8 and June 18, 1974. The fourth set of plans submitted by the plaintiffs incorporated eight of nine design changes or details recommended by the commission, and the plaintiffs agreed to the ninth, but no change was made in response to the commission's comment that the

buildings were too long — twenty-four buildings eighty-four feet long and thirteen buildings 168 feet long.

On June 14, 1974, the chairman of the commission, as chairman of its design advisory committee, made an adverse report to the commission quoted in the margin.[2] On June 18, the commission unanimously accepted that recommendation and disapproved the fourth set of plans as "incongruous to the Historic Aspects of the Island." The plaintiffs appealed to the board, and after a hearing the board denied the appeal because of the length of the proposed buildings and their arrangement on the land, finding that their erection "will be wholly incongruous so as to destroy one of the principal assets of Nantucket."

The plaintiffs appealed to the Superior Court, and after trial the judge found that the reasons for denial of the application stated by the commission were not the reasons in fact but were manufactured in order to control the use of the land and prevent a large residential development; they were "a subterfuge to cover their objections to any clustered development, whatever the architectural design, in an effort to maintain the open space aspect of Nantucket." He ruled that the decisions of the commission and the board exceeded their authority, annulled both decisions, and ordered the commission to issue certificates of appropriateness to the plaintiffs. The defendants appealed, and we transferred the case to this court on our own motion.

1. *Splitting of the claim.* In their complaint the plaintiffs claim that the statute is unconstitutional in several respects, but they "specifically reserve all claims they have in the Federal Court under the provisions of 42 U.S.C.A. §§ 1983 and 1985 (3)." The defendants argue that this

---

[2] "The proposed development is composed of repetitive units uniformly and monotonously spaced over the entire site. The site is generally flat, thus giving a broad view of a dull and unimaginative spacing of units. Rather than having the informal and integrated character of the Nantucket village, it will result more in the aspect of a permanent trailer camp. For this reason we believe that the design submitted is 'incongruous to the historic aspects of the island.' "

reservation requires that the action be dismissed, citing *Tsongas* v. *Secretary of the Commonwealth,* 362 Mass. 708, 714 (1972). There we declined to give declaratory relief on a State constitutional question in view of the plaintiffs' reservation of a similar Federal constitutional question, since any answer by us would be incomplete and would not terminate the uncertainty or controversy giving rise to the proceedings.

We think the present case is quite different. Under § 12 of the statute the plaintiffs' remedy by appeal to the Superior Court was "exclusive." The Superior Court judge did not pass on any constitutional question, State or Federal, nor do we. The record before us does not show that the defendants sought dismissal in the Superior Court on the ground now asserted. We therefore find it unnecessary to consider the propriety or effect of the plaintiffs' purported reservation. Compare *Kaufman* v. *Somers Bd. of Educ.,* 368 F. Supp. 28, 37 (D. Conn. 1973), and *Suarez* v. *Administrator Del Deporte Hipico de P.R.,* 354 F. Supp. 320, 326 (D.P.R. 1972), with *O'Reilly* v. *Curtis Publishing Co.,* 31 F. Supp. 364, 365 (D. Mass. 1940).

2. *The standard of review.* The statute provides in § 9 that it shall be "the function and the duty of the Historic District Commission to pass upon the appropriateness of exterior architectural features ... wherever such exterior features are subject to public view from a public street or way." The commission "shall keep in mind" the statutory purposes, and "shall consider among other things" several listed factors. It "shall not consider detailed designs, relative size of buildings in plan, interior arrangement or building features not subject to public view." It "shall not make any recommendations or requirements except for the purpose of preventing developments obviously incongruous to the historic aspects of the surroundings and the Historic Nantucket District." See *Opinion of the Justices,* 333 Mass. 773, 781 (1955), where it is said, "This last provision is apparently intended to prevent decisions based upon peculiar individual tastes."

Under § 11 of the statute, appeals may be taken to the

board by any person aggrieved by a ruling of the commission, and the decision of the board shall be as determined by a majority vote.[3] Reading the statute as a whole, we think it confers on the commission a substantial measure of discretionary power with respect to "the appropriateness of exterior architectural features" and congruity to historic aspects of the surroundings and the district. The provision for appeal to the board is not to be taken as transferring that discretionary power to the board. It seems intended either to confine the power of the commission within authorized limits, or to prevent its abuse, for example, by decisions based on peculiar individual tastes. The statutory language does not grant to the board the "broad powers" formerly found in G. L. c. 40A, § 19, now replaced by c. 40A, § 14, inserted by St. 1975, c. 808, § 3. See *Smith* v. *Building Comm'r of Brookline*, 367 Mass. 765, 772 (1975).

Under § 12, further appeal may be taken to the Superior Court, which shall determine the facts and annul the board's decision "if found to exceed the authority of such board, or make such other decree as justice and equity may require."[4] The language of § 12 is substantially identical to that of G. L. c. 40A, § 17, inserted by St. 1975, c. 808, § 3, The Zoning Enabling Act, and of St. 1941, c. 373, § 19, applicable to the board of zoning adjustment of Boston. See *Devine* v. *Zoning Bd. of Appeals of Lynn*,

---

[3] "Appeals may be taken to the board of selectmen by any person aggrieved by a ruling of the Historic District Commission. The board of selectmen shall hear and act upon such appeals promptly and the decision of the board shall be as determined by a majority vote of the members of the board."

[4] Section 12 reads in part: "Any person or the Historic District Commission, aggrieved by a decision of the board of selectmen, may appeal to the superior court sitting in equity for the county of Nantucket; provided, that such appeal is filed in said court within fifteen days after such decision is recorded. The court shall hear all pertinent evidence and determine the facts and, upon the facts so determined, annul such decision if found to exceed the authority of such board, or make such other decree as justice and equity may require. The foregoing remedy shall be exclusive, but the parties shall have all rights of appeal and exception as in other equity cases."

332 Mass. 319, 321 (1955); *Bicknell Realty Co.* v. *Board of Appeal of Boston,* 330 Mass. 676, 679 (1953); *Co-Ray Realty Co.* v. *Board of Zoning Adjustment of Boston,* 328 Mass. 103, 106 (1951).

In these circumstances we follow the standard of review laid down in *MacGibbon* v. *Board of Appeals of Duxbury,* 356 Mass. 635, 638-639 (1970). The statute does not give the plaintiffs an absolute right to the certificates they seek. The commission is not compelled to grant the certificates. It has discretionary power in acting thereon. It must act fairly and reasonably on the application presented to it, keeping in mind the purposes of the statute. The decision of the commission cannot be disturbed either by the board or by the court "unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary." See *MacGibbon* v. *Board of Appeals of Duxbury,* 369 Mass. 512, 515-516 (1976).

3. *Authority of the commission.* Applying the *Mac-Gibbon* test to the decision of the commission, we decide that it cannot stand. With warrant in the evidence, the judge found that the certificates were denied because a large residential development would interfere with the "open space" aspect of Nantucket. That decision did not relate to "exterior architectural features." It went beyond the statutory purpose of "preventing developments obviously incongruous to the historic aspects of the surroundings" and the district. It therefore exceeded the authority of the commission and should have been annulled by the board. The board's failure to annul the commission's decision exceeded the board's authority, and the board's decision was properly annulled by the judge.

The defendants argue that any defect in the decision of the commission was cured by the decision of the board. That decision was based on the length and arrangement of the buildings, and the defendants argue that the board acted on tenable grounds. We need not now decide whether such a decision should be upheld, since we think that the board's decision was not "responsive" to the plaintiffs' appeal. *Garelick* v. *Board of Appeals of Franklin,* 350 Mass.

289, 293 (1966). The result was that the board exercised a discretion entrusted to the commission and not to the board.

Similar reasoning, however, leads us to reverse the judge's decision so far as it ordered the commission to issue the certificates applied for. Only in extremely narrow circumstances may a judge order that a board of appeals issue a special permit. *MacGibbon* v. *Board of Appeals of Duxbury,* 369 Mass. 512, 520 (1976). We think the same principle applies here, and this case is not shown to involve such circumstances. The commission is to have an opportunity to exercise its discretionary power, applying the statutory criteria.

4. *Length of buildings.* The question whether the commission may properly consider the length of buildings has been fully argued. It is likely to arise again, and we think the answer is clear. Under § 9 (*c*) the commission is not to consider "relative size of buildings in plan," but length of buildings is part of "general design" and "arrangement," which, under § 9 (*b*), are to be taken into account, together with "the relation of such factors to similar features of buildings and structures in the immediate surroundings and the position of such building or structure in relation to the street or public way and to other buildings and structures."

The board found, "that except for special purpose buildings, such as municipal buildings, churches, schools, utility companies, etc., that there are no buildings in the Historic District more than 90 feet long." There was uncontradicted testimony before the judge, supported by photographs, that there are at least sixteen residential buildings of ninety feet or more on Nantucket. The judge made no finding on the point, and it will be open for consideration in any further proceedings before the commission.

5. *Disposition.* The judgment entered in the Superior Court is to be modified by striking out paragraph (5), ordering the issuance of certificates of appropriateness, and substituting a new paragraph (5), directing the commission to hold such further proceedings as may be necessary

on the plaintiffs' applications, and to reconsider the applications in the light of this opinion. Thus modified, it is affirmed.

*So ordered.*