Thomas A. LaTanzi for the plaintiff.
James R. Wilson for the defendant.

Present: Lee, P.J., Tamkin* & Hurd, JJ.

Donald H. SLEEPER
vs.
Donald BOURNE & others.[1]

District Court Department
Appellate Division, Southern District
Trial Court of the
Commonwealth of Massachusetts

January 10, 1980

[1] Alfred J. Luoni, Elliot MacSwan, Lisa LaBreque, Wilfred L. Dwyer, John E. Harris, and F. Cliff Pearce, as they are members of the Old King's Highway Regional Historic District Commission.

Thomas A. LaTanzi for the plaintiff.
James R. Wilson for the defendant.

Present: Lee, P.J., Tamkin * & Hurd, JJ.

**HURD, J.** This is an appeal from the trial court's finding affirming a decision of the Old King's Highway Regional District Commission (the Commission) which had sustained a decision of the Town of Dennis Historic Committee (the Town Committee). The latter decision denied the plaintiff's (Sleeper) application of appropriateness for the erection of a sixty-eight foot radio communications tower on land owned by Sleeper and his wife in a residential subdivision in East Dennis.

The Commission is a creature of statute.[2] The appellate procedure created thereunder is set forth in its entirety in our footnote.[3]

At the trial court hearing, an agreed statement of facts was admitted, and in addition, the court heard testimony from several witnesses including the plaintiff. Also admitted into evidence were a number of exhibits, which included: copies of the quitclaim deed to Sleeper's property; Sleeper's amateur radio license; the application for a certificate of appropriateness; the drawings, specifications and installation instructions for the proposed radio tower; Sleeper's petition for appeal from the Town Committee to the Commission, with plaintiff's statement attached; a copy of a Town of Dennis Zoning By-Law provision; and the decision of the Commission denying Sleeper's application.

The exhaustive findings of fact of the trial judge, which the statute provides are final and conclusive upon the parties,[4] are set forth as follows:

"1. I find that the plaintiff purchased the premises in question on June 21, 1974 and took title to the same as tenants by the entirety with Esther S. Sleeper. The lot is a quadrilateral, with dimensions of 100.62 feet, 144.82 feet, 100 feet, and 160 feet, and contain an area of 15,441 square feet. The premises in question are part of a subdivision known as 'Scargo Hill Estates.' The subdivision in question was laid out in 1966, is entirely residential, and contains 109 lots. Most of the homes in the subdivision are less than 10 years old, and for the most part are

[1] Alfred J. Luoni, Elliott Mac Swan, Lisa La Breque, Wilfred L. Dwyer, John E. Harris, and F. Cliff Pearce, as they are members of the Old King's Highway Regional Historic District Commission.

★Honorable Alfred C. Tamkin resigned from the Appellate Division on February 1, 1979 and took ho part in the writing of this decision.

[2] St. 1973, c. 470, as amended by St. 1975, c. 845.

[3] St. 1973, c. 470, s. 11 as amended by St. 1975, c. 845, s. 11: "Appeals. Any person aggrieved by the determination of the committee or by an approval of an application through failure of the committee to make a determination within the time allowed under section nine, whether or not previously a party to the proceeding may, within ten days after the filing of a notice of such determination with the town clerk, or within ten days after approval by failure to make a determination within said time limit, appeal to the commission. The commission shall within thirty days after receipt of such appeal in writing from the aggrieved, hear all pertinent evidence and determine the facts, and if, upon the facts so determined, the commission finds that the committee exceeded its authority or exercised poor judgment, was arbitrary, capricious, or erroneous in its action, the commission shall annul the committee determination or approval and remand the case to said committee for further action, or revise the determination of the committee and issue the appropriate certificate or deny it.
"Any person aggrieved by the action of the Commission may, within twenty days after notice of said decision has bee filed with the town clerk of the affected town, appeal to the District Court having jurisdiction over the affected town Said District Court may hear all pertinent evidence and determine the facts and if, upon the facts so determined, such determination or approval is found to exceed the authority of the Commission said District Court may modify either by way of amendment, substitution, or revocation, the decision of the Commission and may issue such superceding approval or denial of the application with such condition as said District Court in its discretion deems appropriate, and shall have all of the powers to act in the matter that are available to a court of general equity jurisdiction.
"The findings of fact by said District Court shall be final and conclusive upon the parties.
"The remedies provided by this section shall be exclusive, but the parties shall have a right to appeal to the Southern Appellate Division District of the District Courts on issues of law.
"Cost shall not be allowed against the commission or the committee unless it shall appear to said District Court that they either acted in bad faith or with malice in the matter from which the appeal was taken.
"Costs shall not be allowed against the party appealing from such determination or approval of the commission unless it shall appear to the court that said party acted in bad faith or with malice in making the appeal to the court" (emphasis added)

[4] St. 1973, c 470, s 11

wooden frame structures having one story with ranch style peak roofs. Some of the houses have television antennas attached to the chimneys. The area has a most pleasant aspect, containing scrub pine, so called, and other flora and fauna indigenous to the Cape. Utility poles carry telephone and power lines. The lots. are, for. the most part, of the sort considered traditional Cape Cod architecture, but are of such a design as to be compatible with the older homes on the Cape. The area has àn aspect of spaciousness.

"2. The plaintiff is, and for a long time has been what is commonly referred to as a 'ham radio' operator. Prior to coming to the Cape, he resided in Fairhaven where he pursued his hobby and maintained (apparently without complaint) metal radio towers for the transmission and receipt of radio signals. In order to insure proper and efficient transmissions and receipt over long distances, a tower of comparable length to the one here at issue is recommended, though not indispensable. The proposed tower is 68 feet in height and has a triangular configuration. It is to be anchored in a cement base about 100 feet from the property line facing Anchor Lane, 50 feet from the rear line, and 42 and 58 feet respectively from the side property lines. The tower is supported by two sets of three way support wires and has a rotating 3 bay cross beam near its top. The plaintiff is duly licensed by the Federal Communications Commission as a 'ham' radio operator under the call sign of WIONK.

"3. The Town of Dennis enacted a zoning by-law which provides in substance that no building shall exceed 35 feet in height, with certain exceptions which include communications towers. No zoning by-law would be offended by the proposed tower.

"4. In addition to the television antennas, there are approximately 17-20 feet in height. There are no towers in the subdivision approximating the height of the plaintiff's proposed tower.

"5. There was substantial evidence introduced at the trial that Cape Cod has unusual historical significance in the field of wireless communications. The court takes judicial notice that recently, the 75th anniversary of the first transatlantic two way radio transmission was commemorated by Executive Proclamation, with appropriate solemnities at the Marconi Station Site in South Wellfleet. There was considerable evidence of the social benefits derived from 'ham' radio operations, such as handling distress messages, weather data, and the like.

"6. There was substantial evidence that the portion of the Town of Dennis in which the plaintiff's property is located has historical significance. Scargo Lake itself is the subject of a charming Indian legend which is part of the folklore of Dennis. The Old Stage Road, so called, passed· through the area at a place not distant from the property in question. Scargo Tower, situated as it is atop the highest hill on Cape Cod also has a history and significance to the population of Dennis. Hokum Rock, so called, has been designated as a site of· historical significance. The area contains numerous Indian artifacts. There is an ancient Indian burial ground by the lake.

"7. The view from Scargo Tower discloses a number of communications towers, but there is no indication as to whether or not their installation preceded the Act. Further, the Act should be viewed as both remedial and prophylactic, viz., to prevent further encroachment upon the historical setting it seeks to protect.

"8. The proposed tower would be a highly visible structure not in harmony with the area and would detract from the area in question.

"9. The committee did take into account the factors mentionèd in the Statute, including hardship to the plaintiff, but did not make a specific finding in its decision on the issue of hardship.

"10. I find that although the denial of the certificate will constitute a personal inconvenience to the plaintiff, such denial does not amount to a substantial hardship within the meaning of the Act."

At the close of the evidence, Sleeper seasonably filed requests for rulings of law, which, together with the trial judge's action thereon, are set forth as follows:

"1. That as a matter of law, the application of the Historic District Act to appellant's radio tower regulates an area which is pre-empted by Federal legislation, the Communications Act of 1934, and is thus, invalid.

"Denied: See number 1 of Court's Answer to contentions of Plaintiff.

"2. That as a matter of law, the regulation of interstate transmissions and radio equipment is of national interest and the denial by the Historic District Commission of appellant's application is interference by the Commission and is prohibited by the commerce clause of the U.S. Constitution.

"Denied: See number 1 of Court's answer to contentions of Plaintiff.

"3. That as a matter of law, the action of the Historic District Commission denying appellant a radio tower deprives appellant of his right of free speech, derived from the First Amendment to the United States Constitution and Part 1, Article 16 of the Massachusetts Constitution.

"Denied: See number 8 of Court's answer to contentions of Plaintiff.

"4. That as a matter of law, the application of the Old King's Highway Regional Historic District Act to appellant's property constitutes an invalid exercise of the police power under Part One, Article Ten of the Massachusetts Constitution and the Fifth Amendment to the Constitution.

"Denied: See number 2 of Court's answer to contentions of Plaintiff.

"5. That as a matter of law, the decision of the Historic District Commission exceeded its authority in that it failed to determine that the appellant's radio tower was appropriate under the Historic District Act.

"Denied: The determination of appropriateness is a question of fact. See number 6 of Court's answers to contentions of Plaintiff.

"6. That as a matter of law, the Historic District Commission exceeded its authority in that it failed to determine that the decision of the Historic District Committee was erroneous because it failed to consider hardship as required by Historic District Act.

"Denied: I find that the Commission did consider hardship. See finding of fact Number 9. See also Number 7 of Court's answers to contentions of Plaintiff.

"8. That as a matter of law, appellant will suffer hardship through the denial of his capacity to engage in his avocation, ham radio operation, if the decisions of the Committee and the Commission denying him the use of a radio tower are upheld.

"Denied: See numbers 2 and 3 of Court's answers to contentions of Plaintiff.

"10. As a matter of law, the standards for review of the District Court under the Old King's Highway Regional Historic District Act are greater than those of the Superior Court under the Nantucket Historic District Act.

"Denied: This request is ambiguous. At any rate it need not be given because not dispositive of an issue in the case. See footnote 1 of Court's opinion, cited in number 3 of Court's answers to Plaintiff's contentions."

Sleeper claims to be aggrieved by the denial of his requests for rulings numbered 1, 2, 3, 4, 5, 6, 8, 9, and 10.

There was no error.

The trial judge, in acting upon Sleeper's request for rulings, treated each issue raised in a thorough and scholarly fashion. We have reviewed the response of the trial judge to Sleeper's contentions of law, as set forth in the report. It appears to us that his statement of the law is correct and dispositive of the issues presented therein. We have incorporated and adopted his findings in this opinion.

Inasmuch as it appeared to the trial judge, as it does to us, that this is a case of first instance, Sleeper's contentions are entitled to serious consideration and the statute should be examined and discussed in some detail.

1. Sleeper contends that the application of the statute, as it relates to him, invades an area pre-empted by federal legislation and is, therefore, invalid. This argument is coupled with the contention that such regulation by the Commission interferes with interstates commerce and is, therefore, unconstitutional. In

Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1 (1824), Chief Justice John Marshall defined interstate commerce in the broadest of terms so as to include all commercial intercourse between states and to exclude only that which was entirely intrastate. This early view of the plenary power of the federal government was followed in Willson v. Black Bird Creek Marsh Co., 27 U.S. (2 Pet.) 245 (1829), but with the caveat that where Congress had not acted so as to use power reserved to the federal government, there might be room for the state governments to legislate. This concept received further refinement in Cooley v. Board of Wardens of Philadelphia, 53 U.S. (12 How.) 299 (1851). In Cooley, a distinction was drawn between those areas of regulation of commerce that called for the application of a uniform rule, and those which of their nature permitted or even required diversity. In the latter area, if congressional legislation on the subject manifests an intent not to regulate the subject, except in a limited way, the states may legislate in these areas not legislated in by Congress. Thus, if Congress chooses to "pre-empt the field," the states cannot validly act in a manner inconsistent with federal law. Even such a seemingly local matter as wheat grown on a farm for consumption by farm animals has been held to be subject to federal legislation under the Commerce Clause. Wickard v. Filburn, 317 U.S. 111 (1942). However, the police power of the states has been respected where it has been exercised in a non-discriminatory manner, even if the exercise does to some extent affect interstate commerce. California v. Zook, 336 U.S. 725, 733 (1949); South Carolina State Highway Dept. v. Barnwell Bros., Inc., 303 U.S. 177 (1938). Yet it has been held that the states may not use the police power as a guise for protecting their own commerce at the expense of interstate commerce, or to prevent interstate competition. Buck v. Kuykendall, 267 U.S. 307 (1925). Nor can the states use their power to impede the flow of commerce. Southern Pac. Co. v. Arizona, 325 U.S. 761 (1945).

These general principles are applicable to radio communications. The Federal Communications Act, 47 U.S.C. s. 151, et seq., make it clear that only the federal government can license a commercial radio station. However, the states, through their courts, may be called upon to adjudicate property rights and other claims of a non-federal nature. Occasionally, a conflict arises which requires an accommodation. In Radio Station WOW v. Johnson, 326 U.S. 120 (1945), an action was filed in a state court to set aside a lease given by a corporation to a radio station duly licensed by the Federal Communications Commission. The state court set aside the lease, conceding it had no jurisdiction over the license itself. The Supreme Court, while conceding that the state had the practical power to terminate the broadcast service of the licensee by taking away the property needed to operate the license, ordered the state to withhold execution of its judgment until the F.C.C. had an opportunity to deal with a new application for a license.

The case of Kroeger v. Stahl, 248 F.2d 121 (3rd Cir. 1957) presents a situation akin to the instant case. A mobile radio station operator sued a building inspector to prevent him from interfering with the construction of a radio tower in a residential zone. The Circuit Court of Appeals for the Third Circuit held that where the zoning ordinance in issue was not directed toward a regulation of interstate commerce, and the effects on such commerce were merely incidental, the ordinance was not so repugnant to the federal power over interstate commerce as to be void. It was further held that such zoning ordinance could be constitutionally applied against the plaintiff.

2. We are of the opinion that the statute at issue does not offend either the state or federal constitution. Opinion of the Justices, 333 Mass. 773 (1955); Opinion of the Justices, 333 Mass. 783 (1955). This type of statute is to be construed in the light of more general statutes dealing with zoning and historic districts. Gumley v. Board of Selectmen of Nantucket, 371 Mass. 718, 719 (1977). Zoning ordinances have been upheld even if their enforcement limits the

use of private property. **Village of Euclid v. Ambler Realty Co.,** 272 U.S. 365 (1926). Compare **Nectow v. Cambridge,** 277 U.S. 183 (1928). The Nectow case recognizes that there might be instances where particular hardship might result in the application of the ordinance. This does not appear to be the case in this instance.

3. The standard for judicial review is analogous to that governing the granting or denial of special permits. **Gumley v. Nantucket, supra** at 719. See **MacGibbon v. Board of Appeals of Duxbury,** 356 Mass. 635, 638-639 (1970). In the Gumley case, the Supreme Judicial Court considered the standard of review provided by the statute establishing a Nantucket Historic District[5], which statute is analogous to the statute under discussion in the present case. At page 722, the Court said:

"The statute provides in s. 9 that it shall be the function and the duty of the Historic District Commission to pass upon the appropriateness of exterior architectural features . . . wherever such exterior features are subject to public view from a public street or way. The Commission shall keep in mind the statutory purposes, and shall consider among other things several listed factors. It shall not consider detailed designs, relative size of buildings in plan, interior arrangement or building features not subject to public view. It shall not make any recommendations or requirements except for the purpose of preventing developments obviously incongruous to the historic aspects of the surroundings and the Historic Nantucket District. See **Opinion of the Justices,** 333 Mass. 773, 781 (1955), where it is said, this last provision is apparently intended to prevent decisions based upon peculiar individual tastes."

Further, at page 723, the Court continued:

"Reading the statute as a whole, we think it confers on the commission a substantial measure of discretionary power with respect to the appropriateness of exterior architectural features and congruity to historic aspects of the surroundings and the district. The provision of appeal to the board (Selectmen) is not to be taken as transferring that discretionary power to the board. It seems intended either to confine the power of the commission within authorized limits, or to prevent its abuse, for example, by decisions based on peculiar individual tastes. The statutory language does not grant to the board the broad powers formerly found in G.L. c. 40A, s. 19, now replaced by c. 40A, s. 14, inserted by St. 1975, c. 808, s. 3. See **Smith v. Building Comm'r of Brookline,** 367 Mass. 765, 772 (1975)."

After reviewing the provisions of the statute having to do with further appeal to the Supreme Judicial Court, the Court concluded, at page 724:

"In these circumstances we follow the standard of review laid down in **MacGibbon v. Board of Appeals of Duxbury,** 356 Mass. 635, 638-639 (1970). The statute does not give the plaintiffs an absolute right to the certificates they seek. The commission is not compelled to grant the certificates. It has discretionary power in acting thereon. It must act fairly and reasonable on the application presented to it, keeping in mind the purposes of the statute. The decision of the commission cannot be disturbed either by the board or by the Court unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary. See **MacGibbon v. Board of Appeals of Duxbury** 369 Mass. 512, 515-516 (1976)."

Our review of the findings of the trial judge herein leads us to conclude that the decision of the Town Committee and the Commission should not be disturbed.

4. Sleeper contends that the application of the act as to him is unconstitutional in that it amounts to a taking of property without affording just compensation, in violation of due process of law. It is our view that this contention is not well founded because there is not an intrusion so immediate and direct as to subtract from Sleeper's full enjoyment of the property, or so as to limit his exploitation of it. **United States v. Causby,** 328 U.S. 256

---

[5]St. 1972, c. 708.

(1946). It has been held that even though there may be a diminution in value of property by reason of the exercise of the state police powers through zoning, said exercise does not constitute a taking for which compensation must be awarded, unless the plaintiff can show that its application as to him is arbitrary or unreasonable. Nectow v. Cambridge, 277 U.S. 183 (1928); Village of Euclid v. Ambler Realty Co., 272 U.S. 365 (1926). So far as we can determine, Sleeper has not demonstrated that the application of the statute as to him has diminished to any degree the value of his property as a residence. At most, he has shown that the denial of the certificate of appropriateness would interfere with his avocation. Furthermore, as was argued by the Commission, the denial of the certificate of appropriateness relates to the particular tower for which Sleeper applied. The Commission has not taken the position that it would not approve any sort of communications tower anywhere in the region. The Town Committee and the Commission can act only with respect to the matter pending before it.

5. The statute is assailed as void for vagueness or lack of standards. In the Gumley case, supra, the Supreme Judicial Court rejected a similar argument and found that the act set forth to a sufficient degree an ascertainable standard. As we understand the Gumley case, the judgment upon the aesthetical considerations is to be respected unless clearly arbitrary or capricious. Sleeper asserts that neither the Commission nor the Town Committee made findings of fact with respect to the appearance during the early days of Cape Cod of the area where the property is located. The short answer to this contention is that the terms of the statute do not require such findings. Apart from that, we do not view the statute as requiring that the architectural and cultural motif be frozen at a particular moment in the history of the Cape. It appears to us to be more general and more flexible than that. Obviously, the Legislature must have contemplated that there are several types of architecture and construction that typify the Cape region, from the small cape half-houses of an earlier period to the more substantial structures associated with the nineteenth and earlier twentieth centuries. We suggest that the mandate is not that one type be preserved to the exclusion of the other, but that the cultural heritage in its entirety be preserved from encroachments by incongruous structures. Thus, we conclude that findings as to the specific conditions at some past time are not required.

6. Sleeper contends that the Commission erred in failing to determine that the proposed tower was appropriate. Indeed, it appears that substantial evidence was introduced regarding the role of wireless communications in the history of the lower Cape as indicated by the findings of the trial judge. However, we believe the issue of compatibility of a structure must be determined in the context of the structure's immediate surroundings. What may be compatible from an aesthetic or historic viewpoint at the Marconi site in South Wellfleet is obviously not determinative of compatibility of a similar structure in the Scargo Lake area of Dennis. As previously suggested, there is no legislative intent requiring uniformity throughout the entire region covered by the statute. Also, the purpose clause of the act[6] suggests a broad interpretation:

"The purpose of this act is to promote the general welfare of the inhabitants of the applicable regional member towns so included, through the promotion of the educational, cultural, economic, aesthetic and literary significance through the preservation of buildings, setting, and places within the boundary of the regional district, and through the development and maintenance of appropriate settings, the exterior appearance of such buildings and places, so as to preserve and maintain such regional district as a contemporary landmark compatible with the historic, cultural, literary and aesthetic tradition of Barnstable County, as it existed in the early days of Cape Cod ..."

---

[6]St. 1973, c. 470, s. 1.

The phrase "early days of Cape Cod" is, perhaps wisely, not defined more precisely. What is sought to be encompassed here we find hard to define simply. Perhaps the word which comes closest is "heritage," in the sense of history, folklore and culture of the area which distinguishes it from other places and which was transmitted to the present generation by tradition. For example, the legends of Scargo Lake and Hokum Rock cannot be properly classified as history, but would appear to come within the ambit of the statute.

It appears to us that, in cases such as the present case, there must be a balancing of the competing interests of the individual seeking to use his property in a manner which might offend the purposes of the statute with the interests of the inhabitants of the region to enjoy unimpaired the heritage of the area.

7. Although the statute does not require it,[7] we believe it would be helpful to the trial court and would facilitate judicial review if, in the future, the Town Committee would include in its decision specific findings of fact on the issue of substantial hardship. We suggest that the issue of hardship ought to be considered by the Town Committee on its own initiative, whether or not the issue is specifically raised by an applicant.

8. Sleeper's reliance on the guarantee of freedom of expression contained in the First Amendment to the Constitution of the United States is misplaced. The statute here in question clearly does not involve a previous restraint or censorship upon discrimination of ideas. Compare **Thomas v. Collins,** 323 U.S. 516 (1945); **Near v. Minnesota,** 283 U.S. 697 (1931). It has long been recognized that even where so cherished a privilege as freedom of speech is involved, the government may by legislation impose reasonable restrictions as to the time, place and manner of such expression. **Saia v. New York,** 334 U.S. 558 (1948); **Cox v. New Hampshire,** 312 U.S. 569 (1941). For example, regulations as to the use of streets for parades or of not unwarrantedly abridge or deny the right of peaceful assembly or the opportunity for the exchange of ideas. Compare **Cantwell v. Connecticut,** 310 U.S. 296 (1940); **Hague v. C.I.O.,** 307 U.S. 496 (1938). The courts carefully scrutinize such regulations to insure that they are applied only with a reasonable view to properly regulating the use of streets, and are not applied as a guise for censorship or in an otherwise discriminatory fashion. **Cox v. New Hampshire, supra.** An ordinance requiring a prior license is suspect, and will be struck down if its standards are so vague as to smack of arbitrary censorship. In other words, if censorship is implicit in the ordinance it is unconstitutional. **Saia v. New York, supra.** Compare **Feiner v. New York,** 340 U.S. 315 (1951); **Kovacs v. Cooper,** 336 U.S. 77 (1949).

Freedom of speech does not dictate that the government must provide a forum or a vehicle for anyone wishing to disseminate his views. What is required is that the government not deny one the opportunity to give his views. **Cantwell v. Connecticut, supra** at 303-304. As applied to the instant case, the constitutional guarantee of freedom of speech does not require that the Town Committee award Sleeper a certificate of appropriateness for a radio tower.

There being no prejudicial error, the report is dismissed.

**So ordered.**
**J. Hurd**

---

[7]See St. 1970, c. 470, s. 10.