Black, J.
This is an appeal by the Old King’s Highway Regional Historic District Commission (hereinafter referred to as “the Commission”), from a District Court trial judge’s overturning of a decision of the Commission upholding the Sandwich Town Committee’s denial of the plaintiffs application for a Certificate of Appropriateness for the placement of white vinyl clapboard siding over the wooden shingles on three (3) sides in the rear and side area of a two-story full colonial building located in the Old Village Center of Sandwich.
This case comes to us for review under the provisions of Chapter 470, Statutes of 1973. The stated purpose of that act is:
... to promote the general welfare of the inhabitants of the applicable regional member towns so included, through the promotion of the educational, cultural, economic, aesthetic and literary significance through the preservation and protection of buildings, settings and places within the boundaries of the regional district and through the development and maintenance of appropriate settings and the exterior appearance of such buildings and places, so as to preserve and maintain such regional district as a contemporary landmark compatible with the historic, cultural, literary and aesthetic traditions of Barnstable County, as it existed in the early days of Cape Cod, and through the promotion of its heritage.
Under its provisions, each of the member towns has its own Historical District Committee consisting of five unpaid members, one of whom must be an architect. Each committee has authority to review applications for a certificate of appropriateness. If the work sought to be authorized is determined by the Town Committee to be inappropriate, the Committee is, nonetheless authorized to approve the application when there are special conditions especially affecting the particular building or structure, etc., which do not affect the District generally. In passing upon appropriateness, Section 10 of the Act specifically requires the Town Committee to consider, among other things:
... the historical value and significance of the building or structure, the general design, arrangement, texture, material and color of the features, sign or billboard involved and the relation of such factors to similar factors of buildings and structures in the immediate sur *129 roundings. The Committee shall consider settings, relative size of buildings and structures, but shall not consider detailed designs, interior arrangement and other building features not subject to public view. The Committee shall not make any recommendations or requirements except for the purpose of preventing changes in exterior architectural features obviously incongruous to the purpose set forth in this Act. The Committee shall consider the energy advantage of any proposed solar or wind device.
Any person aggrieved by the determination of the Town Committee has the right of appeal to the Commission within ten (10) days of the filing of notice of the determination with the Town Clerk. A person aggrieved by the action of the Commission has a further right of review in the District Court having jurisdiction over the town where the application was originally filed. If the District Court finds that the Commission exceeded its authority, the court may modify, either by way of amendment, substitution or revocation, the decision of the Commission and may issue such superseding approval or denial of the application with such conditions as said District Court, in its discretion, deems appropriate. The court has all of the powers to act in the matter that are available to a court having general equity jurisdiction. Any findings of fact by the District Court are final and conclusive upon the parties.
Based upon the report of the trial judge, including his detailed findings of fact, it appears that the plaintiffs acquired the subject property in 1970. The structure in question is an authentic wood frame two-story full colonial building erected in 1703 at the site of the First Cape Cod Settlement. The building contains many of its original exterior architectural features, including a large center chimney, a steep pitched roof, simple trim, wooden pegging and a clapboard front with shingles on the sides and rear. A shingled ell was added at the rear of the building during the late 1800’s. The building is listed in the National Register of Historical Places, and was a tory meeting place in the days of the Revolution, known as “Newcomb’s Tavern”. In the words of the trial judge, “[0]f all the areas of the entire historic district few can compare with the area within which appellant’s home is located. The mill pond serves as the center of focus with the structures arranged around like lesser jewels around a giant gem. Historically and aesthetically the Town Hall Square serves as a paradigm for the entire district”
The Town Hall Square Historical District, in which the plaintiffs building is located, is a nationally recognized part of the Old King’s Highway Regional Historical District which focuses on the pre-1800 era of Sandwich’s history and which contains many fine examples of early Colonial architecture. The majority of the buildings in the District (including the plaintiffs’) date to the period before the Industrial Revolution, and their exterior architectural features still reflect the characteristics of the earlier period.
Apparently, after purchase of the property, the plaintiffs experienced difficulty in maintaining the shingles due to the fact that the paint constantly peeled. Without seeking the approval of the Sandwich Town Committee, the plaintiffs had white vinyl clapboards installed over the side of the rear ell. Upon being advised that a permit was required, they made an application for approval of the vinyl clapboards already installed and for authority to install vinyl clapboards to the two (2) adjacent walls. The location of the proposed vinyl clapboards is not visible from the front of the building, but is visible, at least in part, from a little used side road. The matter was taken up at a regular meeting of the Sandwich Historic District Committee on October 13,1982, and the plaintiffs request was denied, principally because the long range effect of *130 the use of vinyl siding would be detrimental to the District. They appealed to the Commission, which heard the matter on November 7,1982, and affirmed the Town Committee’s denial of the application. The plaintiffs then sought judicial review of the Commission’s decision under the provisions of Section 11, Chapter 470, St. 1973.
In the instant case, three issues appear to be presented on appeal. There is, however, no dispute that in order to disturb the ruling of the commission, the trial court must have found its actions to be “.. . based upon a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary.” Gumley v. Board of Selectmen of Nantucket, 371 Mass. 718 (1977); MacGibbon v. Board of Appeals of Duxbury, 369 Mass. 512 (1976). The first issue for consideration is whether, as a matter of law, the placement of white vinyl clapboard siding over the shingles on the rear and sides of the building in question is an inappropriate change in the exterior architectural features of the building under Section 10, of Statutes of 1973, Chapter 470, as amended, this is essentially a question of fact. The five criteria which govern this determination are: (a) the historical value of the building; (b) the general design arrangement, texture, material and color; (c) the relationship of the proposed change to the immediate surroundings; (d) the setting of the area; and (e) the relative sizes of the structures involved.
As to (a), the defendant argues the change will drastically affect the historic value of the building. It notes that all the local buildings which have clapboard on either side or rear walls were built in the nineteenth or twentieth century. The placement of vinyl clapboard siding on the side and rear portions of the building will virtually destroy its colonial character. The plaintiffs counter this by arguing that only the front portion of the building has been dated as colonial, so that the siding would not cover any of the older sections of the building. They further imply that since the doors, windows and gutters are aluminum, any harm done by the use of aluminum has already occurred. Certainly, this last assumption is legally inaccurate. Sleeper v. Bourne, 1980 Mass. App. Div. 13, stated that one of the purposes of this act is to prevent additional harm to the historic character of the Old King’s Highway district.
With respect to (b), the defendant argues that the design, texture, and material of the siding will decrease the historical value of the building. The smooth, even texture of vinyl serves as a strong contrast to the rough shingling traditionally appearing on colonial era homes. The siding would create clean, orderly vertical lines on the house. The placement of the shingles is far less precise, an indication of the lack of technology available at the time of construction. The plaintiffs again state that the appearance would closely resemble other buildings in the area. Additionally, the judge, in finding for the plaintiffs, found that changes in texture would only be apparent to the eye of an expert, and therefore not within the commission’s authority to regulate.
(c) (d) (e). The defendants claim that the siding will destroy the structure’s place in the historic district. The building represents an important role in the settlement of the colonies, as well as in the American Revolution. Although other buildings in the area have been sided, those are of a different historical and architectural era. The Commission also found that the large area to be covered by the siding would negatively affect the appearance of the building, drawing attention to the non-colonial improvements. Again, the plaintiffs argue that the change in appearance will not be drastic, since the facade of the house will remain intact. They also argue that the siding will not be apparent, except from a rarely used road.
*131 Although the plaintiffs advance some valid arguments, the facts presented on the first issue merely go to the sufficiency of the evidence. Since the evidence would support the Commission’s decision either way, its determination was not arbitrary or capricious.
The trial judge denied the following Request for Ruling by the defendant:
That, as a matter of law, the placement of white vinyl clapboard siding over the shingles on the rear and sides of a prominent colonial building that is listed in the National Register of Historic Places is an inappropriate change in the exterior architectural features under Section 10 of St. 1973 Chapter 470, as amended.
Since we have concluded that this is question of fact, his ruling was correct.
The second issue arises out of this denial by the trial judge of the defendant’s third Request for Ruling, which is as follows:
That, as a matter of law, it is not obviously incongruous with the intent and purpose of St. 1973 Chapter 470, as amended, for a committee to deny a change from painted wooden shingles to white vinyl clapboard on the rear and sides of a colonial building that is listed on the National Register of Historic Places.
As the plaintiffs point out, this issue was not well phrased by the defendant. The Acts of 1973, Chapter 470, Section 10, as amended, states in part: “The Committee shall not make any recommendations or requirement except for the purpose of preventing changes in the exterior ... architectural features obviously incongruent to the purposes set forth in this Act.” The basic purpose of the act is to “... preseve and maintain ... the regional district as a contemporary landmark compatible with the historic, cultural, literary and aesthetic tradition of Barnstable County, as it existed in the early days....” Id, § 1. Therefore, a better statement of the issue at hand would be whether the placement of the siding on the structure would be “obviously incongruous to the purposes” of the act.
The case law in the Commonwealth is scant regarding specific exercise of historial commission powers. It is, however, clear that the town historical district have broad regulatory powers to preserve such areas. The earliest cases dealing with historic preservation in the Commonwealth are two Opinions of the Justices to the Senate at 333 Mass. 773 and 333 Mass. 783 (1955). In those opinions, the Supreme Judicial Court found that legislation creating the historical districts of Beacon Hill and Nantucket would indeed be constitutional if passed. The major question presented in those opinions are not in issue here; namely, whether the legislation constituted a taking of property. (Although the court held that the regulation would not constitute a taking, it noted that in cases in which the regulation of the structure would cause extreme hardship, the application of the statute could be found unconstitutional.) The court, recognizing the strong public interest in preserving historic areas, noted that “[i]t is not difficult to imagine how the erection of a few wholly incongruous structures might destroy one of the principal assets of the town....” Opinion of the Justices, supra, at 780.
The Nantucket Historical District was the subject of one of the two (leading) cases in the Commonwealth. In Gumley v. Board of Selectmen of Nantucket, 371 Mass. 718 (1977), a developer challenged the denial of a building permit for multiple unit dwellings. The town reasoned that open spaces were an integral part of the historic culture of the island, and that the development would destroy too much open space. In addition, the Board of Appeals added that the buildings were so long as to conflict with the traditional appearance of the locale. The Supreme Judicial Court held that historical preservation did *132 not warrant the denial of the permit on the grounds that the structures would consume too much open space. The statute in question, like the one before the court in the case at hand, addressed the preservation of “exterior architectural features”. Since open space is not relative to architectural features, that is not valid grounds for denial under the law. The court noted, as it remanded the case, that the permit could be denied on the basis of length of the buildings. Building size is clearly an “exterior architectural feature,” subject to regulation under the statute. As long as the denial of the permit does not fall under the arbitrary or capricious standard, it will be upheld. The court implied that, considered in the context of the larger community, requiring a maximum building length would be fully congruent with the goal of maintaining the historic character of the area. Gumley provides a good framework for defining the scope of power of the local historical commission (although the powers are defined by a different statute than one before this court, they are similar). While the holding in Gumley was in the landowner’s favor, the commission’s vast powers were definitely affirmed. In stating that the length of the buildings could be regulated, the court is allowing much more subtle regulation than merely dictating style. Further, it demonstrates the broad powers of a historical commission through the regulation of structures which are not, in and of themselves, of historical significance.
The only other (published) case on point in Massachusetts is Sleeper v. Old King's Highway Historical District Commission, 11 Mass. App. Ct. 571 (1981) (the Appellate Division case is Sleeper v. Borne, 1980 Mass. App. Div. 13). In that case, the plaintiff appealed the denial of a permit to erect a 60 foot ham radio antenna in a historical district (the district is the one in question here, but Sleeper dealt with a different section of different historical significance). Although there were no radio antennae in the vicinity, there were quite a few electric and telephone poles, as well as television poles located on rooftops, which reached up to 20 feet. Sleeper’s home was located in a subdivision of modern ranch homes. The neighborhood was located within the historic district, and was near the situs of an ancient Indian legend. The Appeals Court affirmed the Appellate Division’s affirmation of the denial of the permit. The court found that the denial was neither arbitrary nor capricious. The Appellate Division evaluated the commission’s decision by “.. . balancing . .. the competing interest of the individual seeking to use his property in a manner which might offend the purposes of the statute with the interest of the inhabitants of the region to enjoy unimpaired heritage of the area.” 1980 Mass. App. Div. at 19. In its affirmation, the higher court noted that, even if some of the existing poles were as incongruous with the area as the proposed one, the goal of the creation and regulation of the district was to prevent further ham of the historic value of the vicinity. Therefore, even though some offending structures were in existence, this particular offender could be denied a permit. This situation can be distinguished from one at hand inasmuch as the buildings that are presently sided were done with permission of the town.
There are three trial level cases which have been decided in the Commonwealth on the issue. In Forg v. Jaquith, Superior Court Equity #35391, Middlesex Superior Court (December 16, 1974), a Superior Court judge upheld the denial of an application to place vinyl siding on a house in the Lexington Historic District. The petitioners argued that, since other buildings had been sided with the Commission’s permission, the buildings in question should be treated in the same manner. The court, in refusing to accept this argument, found that the structures at issue had greater historical significance *133 than the other sided homes. The other homes were tucked well into the district. The houses involved in that litigation fronted on the Lexington Battle Green. It was held that the Historical Commission had acted reasonably, and could not be overruled on the basis of arbitrariness or capriciousness. A similar result ensued when the owner of a nineteenth century clapboard and shingle home in Springfield attempted to install siding. The Hampden County Housing Court, in Wolerzak v. Gagnon, et al., #LE-651-S-76T (November 19,1976), found that substantial evidence supported the Historical Commission’s decision not to permit the home to be sided.
Finally in Sears v. Historic District Commission of Bedford, Superior Court #75-3849 (September 25, 1979), the Middlesex Superior Court held that the Bedford Historical Commission had not exceeded its authority in denying a certificate of appropriateness to the plaintiffs who wanted to remove a section of a stone wall to allow construction of a walkway. Even though the wall itself was not of historical significance, in that it was not in the same condition as colonial times, it was considered to be an important part of the setting for other historic buildings and structures. Therefore, it was held that the Commission had authority to prohibit even its partial removal. The court noted that there is almost “a presumption against visible changes”. In cases of this nature, the court further noted that “[i]n these circumstances, there is room for discretion by the Commission but little room for arbitrariness or caprice. The case was appealed to the Appeals Court, which affirmed the judgment of the trial court in the rescript opinion, Sears v. Historic District Commission, No. 79-1044, entered April 30, 1980.
Although there are few Massachusetts cases directly on point (except Superior and Housing court cases in unpublished form), a 1981 Maryland case dealt with precisely the same issue as is raised in the pending case (although, of course, under slightly different statutory language). In Faulkner v. Town of Chestertown, 428 A. 2d. 879 (Court of Appeals, 1981), the owner of a contemporary building located within a historic district sought to install vinyl siding on that structure. The owner had not applied for a permit, but had brought suit to invalidate the statute which would require one. Like the Old King’s Highway district, the Maryland district dates back to the seventeenth century. The court held that the house in question was subject to regulation. It further held that a determination of whether siding would be appropriate in light of the district as a whole (as well as the structure itself) was well within the purview of the historic commission.
In this case, the trial judge defined “obviously” to be “... manifestly, plainly, or evidently ...” (see p. 5 of the order of judgment). “Incongruous” was found to mean “.. . lack of harmony, consistency or compatibility.” Id. The judge noted that the term incongruous is not a technical term. The trial judge went on to find that the plain meaning of the term “obviously incongruent” “. . . makes clear that the Committee should not examine proposed changes through the eyes of a highly trained and experienced architect specializing in the field of preservation and restoration or [of?] historical buildings but rather through the eyes of the ordinary person.” Id. at pp 5-6. Much of the testimony opposing the siding at trial and at the administrative hearings was propounded by such an expert.
The defendants persuasively argue that the judge misinterpreted the application of the phrase in question. Clearly the legislature must have intended some technical and architectural factors to be considered, as evidenced by the requirement of an architect (if available) on the five member town committee (§5, Para. 1 of the Act). Section one of the Act also indicates *134 that its purpose includes the preservation of the area’s historic and aesthetic tradition. In the statutory context, it is obvious that the statute requires that any regulatory actions taken by the town be for the prevention of exterior structural changes “obviously incongruent” with the purpose of the Act. In short, this means that if the placement of siding on the house is “obviously incongruent” with the historic or aesthetic tradition of the area, the action of the town (and hence, the Commission) is appropriate. At trial, the plaintiffs successfully argued that only a professional could notice the distinction between the value of a sided and a shingled house. If this were true, one might logically ask how the public could ever become educated, or indeed, how experts will become so, without the existence of the more traditional building styles.
The final issue raised by this appeal is whether the decision of the Commission was arbitrary, capricious or clear erroneous. In essence, this calls for a determination of the sufficiency of the evidence. Without reiterating the evidentiary arguments that have been advanced by the respective parties, it is sufficient to say that in our opinion there was ample evidence before the Commission to support its finding that placement of vinyl siding on the building in question was “obviously incongruous” with the purpose of the act.
Accordingly, the decision of the trial j udge in overturning the decision of the Commission upholding the Sandwich Committee’s denial of the plaintiffs Certificate of Appropriateness is hereby reversed and the Commission’s decision is affirmed. It is further ordered that the vinyl siding already placed upon the building by the plaintiffs without the approval of the Sandwich Town Committee be removed within one hundred and twenty days from the certification of this decision. Failure to comply with the provisions of this order shall be subject to the enforcement provisions of the aforesaid act.