RANNE P. WARNER *vs.* LEXINGTON HISTORIC DISTRICTS
COMMISSION.

No. 03-P-1140.

Middlesex. October 19, 2004. - July 22, 2005.

Present: ARMSTRONG, C.J., GREENBERG, & TRAINOR, JJ.

*Historic District Commission,* Decision, Appeal. *Administrative Law,* Agency,
Judicial review. *Practice, Civil,* Historic district appeal.

This court concluded that a historic district commission's decision denying a
landowner's application seeking a certificate of appropriateness for certain
proposed improvements on her lot was, on its face, not based on a legally
tenable ground, where the decision relied on criteria not found in the
relevant enabling act or by-law, consisted of mere repetition of statutory
language, and failed to link any alleged harm to a relevant statutory factor.
[82-84]

CIVIL ACTION commenced in the Superior Court Department on
January 26, 2001.

The case was heard by *S. Jane Haggerty,* J., on a motion for
summary judgment, and entry of final judgment was ordered by
her.

*Michael A. Murphy* for the plaintiff.

*William L. Lahey* for the defendant.

ARMSTRONG, C.J. The plaintiff, Ranne Warner, owns a house
and lot at the corner of Hancock Street and Hancock Avenue in
Lexington (town). Her land lies within one of the three historic
districts (the Hancock-Clarke Historic District) established in
the town by St. 1956, c. 447 (the Act). In 2000, she sought a
certificate of appropriateness from the town's historic districts
commission (commission) for improvements to her driveway
and yard that she had largely already constructed. The commis-
sion denied her application, and Warner sought judicial review
of its decision under § 10 of the Act. In 2003, a Superior Court

judge, acting on the commission's motion for summary judgment, entered a final judgment affirming the commission's decision. Warner appeals from that judgment.

The improvements at issue are these: first, a gravel driveway extension of a paved driveway that runs from Hancock Avenue parallel to the rear line of Warner's lot,[1] the purpose of the extension being to provide additional parking; second, a low, railroad-tie retaining wall, topped by a cast iron rail fence,[2] separating the gravel extension from Warner's yard; and, third, cedar fencing for a compost pile located between the end of the gravel extension and the back corner of the lot.

We mention, by way of background, that this was not Warner's first encounter with the commission. In 1994 and 1995, she received certificates of appropriateness for major improvements to the same property. These included rebuilding and enlarging a passageway from her house to a barn, extending the driveway from Hancock Street around the barn and out to Hancock Avenue (thus forming a paved segment that Warner has lengthened by the gravel extension), creating a parking cut-out off the Hancock Avenue segment of the driveway to accommodate off-street parking, and repainting the house, barn, and shutters with a new, agreed-upon color scheme. By 2001, the commission had come to quarrel with Warner's execution of the work authorized in 1994-1995.

Lexington's was one of the earliest of the Commonwealth's historic district statutes, being preceded, so far as we know, only by St. 1955, c. 616, which created the Historic Beacon Hill District in Boston. The purpose of the Act was to protect "historic buildings, places and districts through the development of appropriate settings for said buildings, places and districts and through the maintenance of said buildings, places and districts as landmarks of historic interest." St. 1956, c. 447, § 1. The role of the commission is to police the construction, alteration, and demolition of visible buildings and structures within the defined district, including changes of color and post-

---

[1]Neither the existing paved driveway nor the gravel extension abuts the rear lot line; a photograph shows a buffer of lawn, bushes, and trees.

[2]Warner represents that the cast iron fence has been on the property for many decades from the early 1900's, apparently in another location.

ing of signs. In particular § 9 of the Act, as applied to Warner's application, required the commission to "pass upon . . . [t]he appropriateness of exterior architectural features of . . . structures to be erected within the historic districts whenever such features are subject to view from a public street, way, or place." St. 1956, c. 447, § 9(a)(1). Warner acknowledged that the gravel drive extension, the railroad-tie retaining wall and cast iron rail fence, and the cedar fence proposed for the compost area were all at least "slightly visible" from Hancock Avenue, thus establishing the necessity of a certificate of appropriateness to proceed with the work.[3] On appeal Warner does not argue that the wall, the two fences, and the gravel driveway extension are not "structures" within the commission's jurisdiction.[4]

Upon receipt of an application for a certificate of appropriateness for a project involving "external architectural features," the commission is required by the statute to conduct a public hearing (St. 1956, c. 447, § 8) and to render a determination on the application within a specified time. In making its determination, the commission is required to "consider, among other things, the historic value and significance of the building or structure, the general design, arrangement, texture, material, and color of the features, sign or billboard involved and the relation of such factors to similar factors of buildings and structures in the immediate surroundings." St. 1956, c. 447, § 9(a)(4), third

---

[3]Warner argues that the "extent [to which] the work is subject to view from a public street" is a disputed issue of fact, precluding summary judgment; but we understand the materiality of the issue relates not to the commission's jurisdiction but only to the reasonableness of its determination that the work was not appropriate.

[4]The concession is, we think, correctly made. Walls and fences have been held to be "structures" within the coverage of historic district statutes, see *Globe Newspaper Co.* v. *Beacon Hill Architectural Commn.*, 421 Mass. 570, 581 (1996); and the definitions section of the general historic districts enabling act, G. L. c. 40C, § 5, explicitly includes "fence[s], wall[s], terrace[s], walk[s] or driveway[s]" as "structures." We recognize that the General Law, enacted by St. 1971, c. 359, § 1, and its predecessor act, St. 1960, c. 372, was enacted after the Lexington historic districts act; but it has been held that "where we interpret path-breaking legislation in the historic-preservation field, we should not be quick to infer large differences from subsequent legislative fine tuning and refinement of statutory language." *Globe Newspaper Co.* v. *Beacon Hill Architectural Commn.*, 421 Mass. at 581.

par. Where a project is deemed generally inappropriate, the commission is directed to consider whether a "failure to approve an application will involve a substantial hardship to the applicant and whether such application may be approved without substantial detriment to the public welfare and without substantial derogation from the intent and purposes of this act." St. 1956, c. 447, § 9(a)(4), second par. Then, "[i]n the case of disapproval of an application for a certificate of appropriateness," the commission is required to "notify the applicant in writing, *setting forth therein the reasons for its determination*," and it "may make recommendations to the applicant with respect to appropriateness of design, arrangement, texture, material, color, and similar factors" (emphasis supplied). St. 1956, c. 447, § 9(c).

Here, the commission's notice of determination, after a brief introduction describing the application, consisted of five dispositive paragraphs. The first three described the failure of Warner and her husband to complete satisfactorily the work done under the 1994-1995 certificates of appropriateness. The painting of the barn was incomplete. The cupola had been left a different color from the barn itself. The slate roof remained in a state of disrepair. Shutters removed from the house during the repainting had never been put back, and, indeed, Warner, despite assurances to the commission that the shutters would be rehung, had removed most of the hardware necessary for rehanging. Neighbors were complaining of peeling paint. The commission stated in its determination that "the Warners had never completed their original project. All Certificates of Appropriateness clearly state that upon completion of construction, the work is expected to be kept in good condition; clearly this was not the case with the barn."

The remaining two dispositive paragraphs of the notice of determination, set out below,[5] relate that the commission considered the various factors that the Act, as quoted above,

---

[5] "At the conclusion of the hearing, in accordance with the provisions of chapter 447, Acts of 1956, as amended ('Act'), the Commission unanimously determined that the requested driveway extension almost to the property line . . . as well as the retaining wall and iron pipe fence over same, were not appropriate for the purposes of the Act. The Commission determined that failure to approve the application would not involve substantial hardship to the Ap-

directed it to consider. This it does largely by reciting the statutory language; missing are explanations of how those statutory factors bore on their denial of the certificate, the *reasons*, in effect, for their determination.[6]

The Superior Court, in reviewing the adequacy of the decision of a historic district commission, applies "a standard of review analogous to that governing exercise of the power to grant ordinary special permits," taken from the zoning context. *Gumley* v. *Board of Selectman of Nantucket*, 371 Mass. 718, 719 (1977). See *Marr* v. *Back Bay Architectural Commn.*, 23 Mass. App. Ct. 679, 682-683 (1987). A "decision of the commission cannot be disturbed . . . 'unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary.' " *Gumley* v. *Board of Selectman of Nantucket, supra* at 723, quoting from *MacGibbon* v. *Board of Appeal of Duxbury*, 369 Mass. 512, 515-516 (1976). The judge should conduct a two-step inquiry. First, the judge should determine whether

plicant, owing to conditions especially affecting the property at 30 Hancock Street but not affecting the historic district generally. Even if substantial hardship owing to said conditions were shown, which it was not, the Commission determined that approval of the above items could not be given without substantial derogation from the intent and purposes of the Act and without substantial detriment to the public good, especially to the neighboring properties and Hancock Avenue properties, in general.

"In summary, the Commission, in reaching its unanimous determination, considered the applicant's proposal for the driveway extension, railroad-tie retaining wall with the iron pipe railing over it, including, size, general design, arrangement, texture and materials. The Commission considered the approved bituminous concrete driveways maintained by the Applicant at this location, including and especially the size of same, considered generally the building lot and the buildings themselves, including the historical value and significance of the buildings, and the Commission took into account the relation of all said conditions to other properties in the immediate surroundings. Prior to reaching its unanimous decision, the Commission recommended that the homeowners finish the original renovation of the house: including rehanging the shutters, repairing the barn and repainting it and also finishing the painting of the cupola. The Commission also stressed the point that enlarging the parking area parallel to Hancock Street almost to the property line, where there is a 'dump' for composting and workmen's trash, would compact the land to an extent that the roots of the large trees belonging to the neighbors along that area would be crushed and thus starved, thereby killing the trees in a few years time. . . ."

[6]The sole articulation of a reason is the final sentence relating to parked cars endangering neighboring trees.

the decision, on its face, is "insufficient in law to warrant the commission's determination." *Marr* v. *Back Bay Architectural Commn.*, *supra* at 683. If so, the decision "should be annulled without further ado unless the court, in the exercise of its discretion, chooses to request a supplemental statement of the commission's reasons before any further proceedings are had." *Ibid.* Compare Ford, Judicial Review in Zoning Variances Cases & Related Matters, 61 Mass. L.Q. 24 (1976).

"If the commission's decision appears to be based on a legally tenable ground, the court must then consider whether the reasons given are 'warranted by the evidence' . . . ." *Marr* v. *Back Bay Architectual Commn.*, 23 Mass. App. Ct. at 684. "The court is obliged to take evidence and make findings of fact on this branch of the inquiry." *Ibid.* Focusing on this principle, Warner argues, with some plausibility, that the judge could not properly affirm the commission's decision without first affording her the de novo review of the facts called for by § 10 of the Act. We do not reach this contention because, in our view, the commission's decision failed the first prong of the inquiry.

The principal and recurring focus of the factual portion of the commission's decision was the failure to complete the 1994 and 1995 improvements. To the extent that the commission relied on that failure, it erroneously "inject[ed] criteria not found in the enabling act . . . or in the by-law." *Dowd* v. *Board of Appeals of Dover*, 5 Mass. App. Ct. 148, 156 (1977) (discussing zoning by-law and enabling act). Accord *Fafard* v. *Conservation Commn. of Reading*, 41 Mass. App. Ct. 565, 571 (1996). The balance of the commission's decision consisted of paraphrasing statutory language, without making specific findings. Mere repetition of statutory language does not adequately support the commission's decision. See *Wolfson* v. *Sun Oil Co.*, 357 Mass. 87, 89-90 (1970); *Josephs* v. *Board of Appeals of Brookline*, 362 Mass. 290, 298 (1972); *Delgaudio* v. *Board of Appeals of Medford*, 1 Mass. App. Ct. 850, 850-851 (1973).

The commission's finding that the improvements would kill neighbors' trees appears to be logically relevant in applying the hardship exception and the substantial detriment criterion. St. 1956, c. 447, § 9(a). The commission failed otherwise to

link harm to neighboring trees to a statutory factor. Historic district commission decisions affirmed by this court have clearly explained the project's impact on enumerated statutory factors such as historic character or neighborhood context. See *Sleeper* v. *Old King's Highway Regional Historic Dist. Commn.*, 11 Mass. App. Ct. 571, 573 (1981) (radio tower did not fit with low physical profile of surrounding structures and with historical context); *Anderson* v. *Old King's Highway Regional Historic Dist. Commn.*, 397 Mass. 609, 612 (1986) (vinyl siding would diminish historic significance of property, cause deterioration of the structure, and set detrimental precedent for neighborhood); *Harris* v. *Old King's Highway Regional Historic Dist. Commn.*, 421 Mass. 612, 616 (1996) (home with three-car garage and outbuilding would overwhelm small lot, be out of keeping with massing and organization of neighborhood homes, and appear incongruous from street).

We conclude that the commission's decision was facially deficient. There is no need for the Superior Court to engage in an evidentiary hearing beyond establishing the record of the decision of the commission. The court may annul the decision or, in its discretion, request a supplemental statement of the commission's reasons. *Marr* v. *Back Bay Architectural Commn.*, 23 Mass. App. Ct. at 683.

The judgment is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*