ROBERT W. HIGGINS, trustee,[1] & another[2] *vs.* DEPARTMENT OF
ENVIRONMENTAL PROTECTION & another.[3]

No. 04-P-1410.

Suffolk. June 8, 2005. - October 13, 2005.

Present: PERRETTA, DREBEN, & GELINAS, JJ.

*Department of Environmental Protection. License. Administrative Law,* Hearing, Standing.

The plaintiffs, abutters of certain tidelands property, lacked standing to seek
an adjudicatory hearing, pursuant to G. L. c. 91, § 18, and 310 Code Mass.
Regs. § 9.17(1) (2000), to challenge the defendant Department of
Environmental Protection's grant of a waterways license to a developer of
that property, where abutters had no special status for purposes of standing
under the regulations; where the determination that the plaintiffs' claim of
interference with their view of the tidelands did not differ in kind or
magnitude from that of the general public was not patently wrong,
unreasonable, arbitrary, whimsical, or capricious; and where the plaintiffs
did not state an interest that was protected in claiming injury arising from
traffic and parking problems. [756-759]

CIVIL ACTION commenced in the Superior Court Department on
May 2, 2003.

The case was heard by *Carol S. Ball,* J., on motions for judgment on the pleadings.

*Michael K. Murray* (*Robert H. Fitzgerald* with him) for the
plaintiffs.

*Scott E. Erlich* (*Michael A. Leon* with him) for Waterside
Group 2, LLC.

DREBEN, J. The plaintiffs are abutters of certain filled private
tidelands property in Newburyport, on which Waterside Group

---

[1]Of the Forty-Five Water Street Realty Trust and the 47 Water Street Realty
Trust.

[2]Jacalyn E.S. Bennett & Company.

[3]Waterside Group 2, LLC.

2, LLC (Waterside), the intended grantee[4] of a waterways license approved by the Massachusetts Department of Environmental Protection (department), seeks to construct a hotel and other facilities.[5] In an attempt to challenge the department's determination to grant the license, the plaintiffs sought an adjudicatory hearing, pursuant to G. L. c. 91, § 18, and 310 Code Mass. Regs. § 9.17(1) (2000). Waterside and the department filed a joint motion to dismiss, claiming that the plaintiffs lacked standing. An administrative law judge issued a recommended final decision, allowing the joint motion to dismiss, and also issued a recommended ruling denying reconsideration of that decision, both of which became final by the approval of the department's commissioner. Claiming errors of law in the final agency decision, the plaintiffs sought certiorari[6] and declaratory relief, and review under G. L. c. 30A, § 14(7), but a judge of the Superior Court allowed the defendants' motion for judgment on the pleadings and affirmed the decision of the department. We affirm the judgment.

As noted by the administrative law judge, "G. L. c. 91 charges the Department with protecting the Commonwealth's interests in its harbors, tidelands, and waters and with acting as a steward of the public's interest in those lands." See G. L. c. 91, § 2; 310 Code Mass. Regs. § 9.01(2) (2000). The license the plaintiffs oppose is for a nonwater-dependent use[7] pursuant to G. L. c. 91, § 18. That section also provides that a "person aggrieved by a

---

[4]The Department of Environmental Protection decided not to issue the license until the resolution of an appeal by the plaintiffs of the local zoning approval.

[5]The project, which is to replace a structure used as a flea market, also includes, inter alia, a restaurant, a building (Atkinson building) with retail space on the first floor and offices on the two upper floors, associated parking, roadways, and pathways.

[6]On appeal, the plaintiffs have not pursued their certiorari claim.

[7]A definition of water-dependent uses was added to G. L. c. 91, § 1, by St. 1983, c. 589, § 21: "those uses and facilities which require direct access to, or location in, marine or tidal waters and which therefore cannot be located inland, including but not limited to: marinas, recreational uses, navigational and commercial fishing and boating facilities, water-based recreational uses, navigation aids, basins, and channels, [and] industrial uses dependent upon water . . . ."

Title 310 Code Mass. Regs. § 9.12(2)(a) (2000) lists uses that are to be considered by the department as water-dependent, including "parks, esplanades,

decision by the department to grant a license . . . shall have the right to an adjudicatory hearing in accordance with chapter thirty A." G. L. c. 91, § 18, as amended by St. 1983, c. 589, § 26. Extensive regulations, not challenged by the plaintiffs, define "aggrieved person" and contain other provisions relevant to the determination of standing.

> "Aggrieved Person means any person who, because of a decision by the Department to grant a license or permit, may suffer an injury in fact, which is different either in kind or magnitude, from that suffered by the general public and which is within the scope of the public interests protected by [G. L.] c. 91 and c. 21A."[8]

310 Code Mass. Regs. § 9.02 (2000).

The persons who have the right to an adjudicatory hearing are listed in 310 Code Mass. Regs. § 9.17(1) (2000) and include:

> "(b) any person, aggrieved by the decision of the Department to grant a license or permit who has submitted written comments within the public comment period."

It is conceded that the plaintiffs fulfilled all applicable procedural requirements, and the only issue before us is whether the plaintiffs are aggrieved persons under the Waterways Act, G. L. c. 91. Accordingly, we do not discuss their substantive claims in opposition to the license.

The plaintiffs rely on the following claims of harm to confer standing: (1) as abutters they will suffer an injury that is different in kind or magnitude from that suffered by the general public and that is within the scope of the public interest protected by c. 91; (2) the hotel will block the view of the tide-

---

boardwalks, and other pedestrian facilities that promote use and enjoyment of the water by the general public and are located at or near the water's edge . . . ."

Under 310 Code Mass. Regs. § 9.12(1) (2000), any project not classified as a water-dependent project or accessory to such a project shall be classified as a nonwater-dependent project. Although Waterside's license covered some water-dependent uses, the department treated the whole project as nonwater-dependent.

[8]The administrative law judge noted that the citation to G. L. c. 21A has no relevance to this case, and no party argues otherwise.

lands they enjoy from their private offices, and will also impede their view as they travel to their offices and around the waterfront, an area they travel more frequently than the general public; and (3) the project will create severe traffic problems and will result in parking on the abutters' property because there will be people unable to find parking in public spaces.

There was no error in rejecting these claims as conferring standing. Abutters do not receive special status for purposes of standing under the regulations. Rather, for persons in the circumstances of the plaintiffs, standing depends on whether they are persons aggrieved as defined in 310 Code Mass. Regs. §§ 9.02 and 9.17(1)(b), quoted above. *In the Matter of Lipkin,* 2 DEP Rep. 249, 250 (1995).

The plaintiffs fare no better on the claims concerning interference with their views of the tidelands. While the impact on their views from their private offices differs in kind or magnitude from that of the general public, the administrative law judge correctly ruled that this is not an interest that the statute protects. Rather, the statute protects for water-dependent purposes the public's interest in views from public places, such as parks and esplanades. See note 7, *supra,* quoting from 310 Code Mass. Regs. § 9.12(2)(a); 310 Code Mass. Regs. § 9.51(2) (2000), a portion of which is set forth in the margin.[9]

---

[9]Title 310 Code Mass. Regs. § 9.51(2) provides:

"If the project includes new structures or spaces for nonwater-dependent use, such structures or spaces must be developed in a manner that protects the utility and adaptability of the site for water-dependent purposes by preventing significant incompatibility in design with structures and spaces which reasonably can be expected to serve such purposes, either on or adjacent to the project site. Aspects of built form that may give rise to design incompatibility include, but are not limited to:

". . .

"(b) the layout and configuration of buildings and other permanent structures, insofar as they may affect existing and potential public views of the water . . . especially along sight lines emanating in any direction from public ways and other areas of concentrated public activity[.]"

While accepting the plaintiffs' allegations as true, the administrative law judge rejected, as matter of law, the plaintiffs' claim that their more frequent travel in the waterfront area differs in kind or magnitude from that of the general public.[10] Such a determination (i.e., that seeing the view more frequently because of workplace proximity to the proposed project is, as matter of law, not a difference in kind or magnitude of injury within the meaning of 310 Code Mass. Regs. § 9.02) is not an "interpretation [that] is patently wrong, unreasonable, arbitrary, whimsical or capricious." The determination is, hence, not to be disturbed. *TBI, Inc.* v. *Board of Health of N. Andover*, 431 Mass. 9, 17 (2000), quoting from *Brookline* v. *Commissioner of the Dept. of Envtl. Quality Engr.*, 398 Mass. 404, 414 (1986).[11]

As the department and the Superior Court correctly ruled, the plaintiffs' third claim of injury, traffic and parking problems, did not state a protected interest. The plaintiffs' reliance on 310 Code Mass. Regs. § 9.51(1) (2000), set forth in part in the margin, is misplaced.[12] The consideration of "traffic flows and parking needs" in developing the project must only be taken

---

[10]In denying the motion for reconsideration, the administrative law judge wrote: "Even assuming, as I did, that the [plaintiffs] travel more frequently in the area than some members of the general public because of the proximity of the [plaintiffs'] workplace to the site, their injury is no different than that of the remainder of the public who frequent the area. As before, I assumed the [plaintiffs'] allegations to be true. However, I rejected their claim because their injury is no different in kind or magnitude from that of the general public. The injuries . . . do not demonstrate that [the plaintiffs] are aggrieved persons under 310 [Code Mass. Regs. §§ ] 9.02 and 9.17(1)(b)."

We need not consider the plaintiffs' dubious argument, raised for the first time in their reply brief, that the administrative law judge used the wrong standard by requiring the plaintiffs to show an injury different in kind or magnitude suffered by a subset of the public — those who frequent the waterfront area — rather than different from that suffered by the *general* public. "Issues raised for the first time in a reply brief are not properly before us." *Henderson* v. *Commissioners of Barnstable County*, 49 Mass. App. Ct. 455, 459 (2000). See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Kelley* v. *Rossi*, 395 Mass. 659, 665 n.6 (1985).

[11]The plaintiffs argue that the rejection of both their claims — private view and frequency of public view — precludes standing of any abutter. The argument is fallacious. For example, the owner of a park, open to the public, abutting a project obstructing the views from the park would have standing.

[12]Title 310 Code Mass. Regs. § 9.51(1) provides:

into account to prevent conflict in operation between the users of facilities of private tenancy and "those of any water-dependent facility which reasonably can be expected to locate on or near the project site." Assuming, contrary to the contention of Waterside, that the project includes facilities of private tenancy (e.g., the offices in the Atkinson building, see note 5, *supra*), the plaintiffs are not protected against traffic and parking problems, as the plaintiffs' property is not a water-dependent facility. Nor is there anything in the record suggesting that the plaintiffs alleged to the administrative law judge that they are likely participants in "any water-dependent facility which reasonably can be expected to locate on or near the project site."

The plaintiffs, presumably in an effort to show that the present decision of the department was arbitrary or capricious, see G. L. c. 30A, § 14(7), argue that the decision was inconsistent with previous cases of the department, specifically, *In the Matter of Town of Hull*, 2 DEP Rep. 160 (1995); *In the Matter of Pamet Harbor Yacht Club, Inc.*, 6 DEP Rep. 11 (1999); and *In the Matter of Cambridge Research Park, LLP*, 7 DEP Rep. 66 (2000). The administrative law judge analyzed each of the cases and found them to be consistent with the present decision. We have read these cases, all of which involve water-dependent petitioners, and consider that they may reasonably be distinguished from this case and are not inconsistent with it.

*Judgment affirmed.*[13]

---

"If the project includes nonwater-dependent facilities of private tenancy, such facilities must be developed in a manner that prevents significant conflict in operation between their users and those of any water-dependent facility which reasonably can be expected to locate on or near the project site. Characteristics of the respective facilities that may give rise to such user conflict include, but are not limited to:

". . .

"(d) traffic flows and parking needs[.]"

[13]The request for declaratory relief is misplaced in this case. See *Lily Transp. Corp.* v. *Assessors of Medford*, 427 Mass. 228, 229 n.2 (1998).