770      73 Mass. App. Ct. 770 (2009)

Hertz *v.* Secretary of the Executive Office of Energy and Environmental Affairs.

JENNIFER HERTZ & others[1] *vs.* SECRETARY OF THE EXECUTIVE OFFICE OF ENERGY AND ENVIRONMENTAL AFFAIRS[2] & others.[3]

No. 07-P-1717.

Suffolk. November 4, 2008. - February 27, 2009.

Present: McHUGH, DREBEN, & GREEN, JJ.

*Boston. Administrative Law,* Standing. *Secretary of Energy and Environmental Affairs. Estoppel.*

The plaintiffs, abutters of a municipal harbor, lacked standing to challenge the approval by the Secretary of the Executive Office of Energy and Environmental Affairs of an amendment to a plan for that harbor, where the applicable regulations did not create a right in the plaintiffs to redress their claims, based on the goal of protecting clean air and water and aesthetic interests, that development authorized by the amendment would harm their private property; and where granting standing based on such goals would subject almost all municipal harbor projects to litigation and confer rights beyond those of comment and public hearing envisioned by the regulations. [771-776]

In an action challenging the 2006 approval by the Secretary of the Executive Office of Energy and Environmental Affairs of an amendment to a municipal harbor plan, there was no merit to the plaintiffs' claim that their reliance on an earlier amendment to the plan permitted them to challenge the 2006 approval. [776]

CIVIL ACTION commenced in the Superior Court Department on December 21, 2006.

Motions to dismiss were heard by *John C. Cratsley,* J.

*Howard P. Speicher* for the plaintiffs.

*Louis M. Dundin,* Assistant Attorney General, for Secretary of the Executive Office of Energy and Environmental Affairs.

---

[1]Alice Wang, Deborah Hall, Janet Sweeney, Antti Kankkuenen, Daniel Chisolm, Tom Decapo, Daniel Passacantilli, Louis Chabrier, Lydia Kankkunen, Michael Prinn, Patrick Sweeney, Paul Yu, Josh Cummings, Lina Klebaner, Peta-Gaye M. Prinn, Robert Sarno, Susan Passacantilli, Tara Largess, Yael Dar, Matthew Martoma, and Rosemary Martoma.

[2]The name of the Executive Office of Environmental Affairs (EOEA) was changed to the Executive Office of Energy and Environmental Affairs by St. 2007, c. 19, § 12, amending G. L. c. 21A, § 1.

[3]North Washington Wharf LLC; Beverly Wharf LLC; and Boston Redevelopment Authority. These defendants were permitted to intervene.

*Adam N. Lewis,* for North Washington Wharf LLC & another, was present but did not argue.

*Mary K. Ryan,* for Boston Redevelopment Authority, was present but did not argue.

DREBEN, J. The plaintiffs, unit owners or residents of the Strada 234 Condominium on Causeway Street in Boston, challenge the approval by the Secretary of the Executive Office of Energy and Environmental Affairs (Secretary) of the 2006 amendment to the municipal harbor plan for the city of Boston, which had previously been amended in 1999 (the 1999 plan). The 2006 amendment permits the development of Lovejoy Wharf (which abuts the plaintiffs' property) and authorizes two buildings of a height which the plaintiffs claim will directly block the light, air, and visual benefits of their property; will reduce their access to the waterfront; and will create traffic problems, noise, and pollution on their property. In addition, the plaintiffs claim they were entitled to rely on the 1999 plan, which they urge entitles them to standing. A judge of the Superior Court held that the plaintiffs lack standing to challenge the Secretary's approval and allowed the defendants' motions to dismiss. We affirm.

In determining whether standing exists, we look to the considerations set forth in *Enos* v. *Secretary of Envtl. Affairs,* 432 Mass. 132, 135-136 (2000): the language of the statute [or regulations]; its or their intent and purpose; "the nature of the administrative scheme; decisions on standing; any adverse effects that might occur, if standing is recognized; and the availability of other, more definite, remedies to the plaintiffs. In making [the] inquiry, . . . special attention [is to be given] to the requirement that standing usually is not present unless the governmental official or agency can be found to owe a duty directly to the plaintiffs." Applying these considerations, we conclude that the plaintiffs' claim of standing fails.

Both the regulations governing approval of municipal harbor plans[4] and the State regulations governing trust lands[5] have as

---

[4]See 301 Code Mass. Regs. §§ 23.00 et seq. (2000).

[5]See 310 Code Mass. Regs. §§ 9.00 et seq. (1996). "Trust Lands" are defined by § 9.02 as

"present and former waterways in which the fee simple, any easement, or other proprietary interest is held by the Commonwealth in trust for

772                        73 Mass. App. Ct. 770 (2009)

Hertz *v.* Secretary of the Executive Office of Energy and Environmental Affairs.

their objective the management of coastlines and waterways in the public interest, including an emphasis on water-dependent uses. See, e.g., § 23.05 of the municipal harbor plan regulations.[6]

the benefit of the public. All geographic areas subject to the jurisdiction of M.G.L. c. 91, as specified in 310 CMR 9.04, are generally considered to be trust lands."

[6]Title 301 Code Mass. Regs. § 23.05 establishes standards for municipal harbor plan approval:

"(1) The plan must be consistent with all CZM [Coastal Zone Management] Policies, as applicable. . . .

"(2) The plan must be consistent with state tidelands policy objectives and associated regulatory principles, as set forth in 310 CMR 9.00 of DEP. . . .

"(a) As articulated in 310 CMR 9.00, the primary state tidelands policy objectives with which the plan must be consistent are as follows:

. . .

"2. to preserve any rights held by the Commonwealth in trust for the public to use tidelands for lawful purposes, and to preserve any public rights of access that are associated with such use, as provided in 310 CMR 9.35;

"3. to preserve the availability and suitability of tidelands that are in use for water-dependent purposes, or that are reserved primarily as locations for maritime industry or other specific types of water-dependent use, as provided in 310 CMR 9.32(1)(b) and 9.36;

. . .

"10. to ensure that nonwater-dependent use projects on Commonwealth tidelands, except in Designated Port Areas, promote public use and enjoyment of such lands to a degree that is fully commensurate with the proprietary rights of the Commonwealth therein, and that ensures that private advantages of use are not primary but merely incidental to the achievement of public purposes, as provided in 310 CMR 9.53.

. . .

"(c) If the plan includes provisions that are intended to substitute for the minimum use limitations or numerical standards of 310 CMR 9.00 at 310 CMR 9.51(3)(a) through (e), 9.52(1)(b)(1), or 9.53(2)(b) and (c), the Secretary must determine that the following conditions have been met, as applicable:

. . .

In addition, the municipal harbor plan regulations set forth that the Commonwealth and its municipalities are to act in partnership in carrying out the State policies governing stewardship of trust lands.[7]

In considering the plaintiffs' standing under the municipal harbor plan regulations, we look to our recent decision in *Higgins* v. *Department of Envtl. Protection*, 64 Mass. App. Ct. 754 (2005), where we analyzed the closely related trust lands regulations. There, we held that the plaintiffs lacked standing despite their claims that they were abutters, that their office views of the tideland would be blocked by a hotel licensed by the defendant-department, and that the project would create severe traffic and parking problems, particularly to their property. We held that the regulations do not provide abutters with a special status or presumption for purposes of standing, and that the interests claimed

> "2. as provided in 310 CMR 9.51(3)(b), governing the location of certain facilities of private tenancy, the plan must specify alternative limitations and other requirements that ensure that no significant privatization of waterfront areas immediately adjacent to the water-dependent use zone will occur for nonwater-dependent purposes, in order that such areas will be generally free of uses that conflict with, preempt, or otherwise discourage water-dependent activity or public use and enjoyment of the water-dependent use zone, as appropriate for the harbor in question."

[7] See 301 Code Mass. Regs. § 23.01(2), entitled "Purpose," which provides:

> "301 CMR 23.00 establishes a voluntary procedure by which municipalities may obtain approval of municipal harbor plans from the Secretary, in order that such plans may serve to inform and guide EOEA agency actions affecting the implementation of waterway management programs at the local level. . . . The additional purposes served by the regulations are as follows:
>
>> "(a) to promote long-term, comprehensive, municipally-based planning of harbors and other waterway areas that fully incorporates state policies governing stewardship of trust lands, as defined in 310 CMR 9.02; and that establishes, through early and continuing consultation, an effective partnership between the Commonwealth and its municipalities in such planning efforts;
>>
>> . . .
>>
>> "(d) to foster the right of the people to clean air and water, freedom from excessive and unnecessary noise, and the natural, scenic, historic, and aesthetic qualities of their environment under Article XCVII of the Massachusetts Constitution."

are not protected under the trust lands regulations. *Id.* at 756-757. We also held that the administrative judge could reject the plaintiffs' claim that their more frequent travel in the area caused them injuries which differed in kind or magnitude from those of the general public. *Id.* at 758.

To the extent that the plaintiffs in the present case make similar claims, namely the blocking of their private views, traffic and parking problems, and their special status as abutters, those claims fail for the same reasons as in *Higgins, supra.* The municipal harbor plan regulations do not provide greater protection for these interests than the trust lands regulations in *Higgins.* See notes 6 and 7, *supra.* We also conclude that the plaintiffs' other claims such as their diminished use of and access to the waterfront and their being subject to increased noise and pollution are not within the area of concern of the harbor plan regulations, "or, stated another way," the regulations do not create "a right in the particular plaintiff[s] to redress those injuries." *Enos* v. *Secretary of Envtl. Affairs,* 432 Mass. at 139 n.6.[8] The purpose stated in the municipal harbor plan regulations, see note 7, *supra,* which also appears in the trust lands regulations,[9] does not create in the plaintiffs a protected interest in clean air and water, nor does art. 49 of the Amendments to the Massachusetts Constitution, as amended by art. 97 of the Amendments, confer standing on the plaintiffs in this action to protect the aesthetic qualities of their environment. See *Enos, supra* at 142 & n.7.

Moreover, unlike § 9.02 of the trust lands regulations, which contains a definition of "aggrieved person"[10] and a provision

---

[8]Contrary to the plaintiffs' claim, the Federal Coastal Zone Management Act of 1972, 16 U.S.C. §§ 1451 et seq. (Act), does not protect the claimed interests of the plaintiffs. The open space and aesthetic values to be protected by the Act are for the public rather than for private property owners. Title 16 U.S.C. § 1452(2)(B) (2006), upon which the plaintiffs also rely, states as a national policy:

"[T]he management of coastal development to minimize the loss of life and property caused by improper development in flood-prone, storm surge . . . areas [and in areas affected by or vulnerable to similar hazards]."

[9]See 310 Code Mass. Regs. § 9.01(2)(e) (1996).

[10]Title 310 Code Mass. Regs. § 9.02 (1996) defines "Aggrieved Person" as

"any person who, because of a decision by the Department to grant a

for an adjudicatory hearing for such persons, the municipal harbor plan regulations in § 23.04 provide only for a public hearing, public comments, and a reconsideration process. What was said in *Enos, supra,* with reference to the Massachusetts Environmental Protection Act (MEPA), is equally applicable to the provisions for approval of municipal harbor plans. As with MEPA, the harbor plan regulations

> "contemplate[] that persons such as the plaintiffs may play a role in the process, by submitting written comments or participating in . . . public or informational hearings . . . . An agency's . . . findings, presumably, will reflect public concerns and, hopefully, result in agency action that avoids or minimizes adverse . . . consequences. It is through this somewhat democratic process that full disclosure of the environmental impact of a project may be made, to ensure a thorough environmental review of a project during its early planning stages.
>
> "We discern nothing in the [regulations'] language, purpose, or administrative scheme, however, to suggest a legislative intent that persons such as the plaintiffs should be able to seek judicial review of the Secretary's determination of what constitutes a proper [approval]."

*Enos,* 432 Mass. at 137-138.

That the plaintiffs may not challenge the Secretary's approval does not mean that they may not have other avenues to challenge that approval. As pointed out in the Secretary's written decision, "[T]he only content of [the 2006 amendment to the municipal harbor plan] that I determine to be binding are the proposed substitute provisions and associated offsetting benefits, as modified herein. Accordingly, all other plan content shall be regarded as background material for Mass. [Department of Environmental Protection] licensing purposes, and thus subject to change in the due course of further MEPA and [G. L.] c. 91 review."

---

license or permit, may suffer an injury in fact, which is different either in kind or magnitude, from that suffered by the general public and which is within the scope of the public interests protected by M.G.L. c. 91 and c. 21A."

Granting the plaintiffs standing in this case would also, we believe, have adverse effects contrary to the purposes of the administrative scheme of the municipal harbor plan regulations. In *Enos, supra* at 138, the court considered that the effect of granting standing based on the goal of environmental protection would allow suit with the attending delay in almost every project within the jurisdiction of MEPA "based on generalized claims by plaintiffs of injury such as loss of use and enjoyment of [their private] property." Similarly here, granting standing to the plaintiffs to assert claims of harm to their private property, compare *Higgins*, 64 Mass. App. Ct. at 758 n.11, based on the goal of protecting clean air and aesthetic interests would subject almost all municipal harbor projects to litigation and confer rights beyond those of comment and public hearing envisioned by the harbor plan regulations.

The plaintiffs' additional claim that their reliance on the 1999 plan and certain representations of unknown employees of the Boston Redevelopment Authority permits them to challenge the Secretary's approval is without merit. The 1999 plan envisioned ongoing changes to Lovejoy Wharf although not the particular plan now approved. Moreover, estoppel generally does not apply to governmental entities. See *Weston Forest & Trail Assn.* v. *Fishman*, 66 Mass. App. Ct. 654, 660 (2006).

Because the Superior Court judge correctly found that the plaintiffs have no standing, the judgment of dismissal is affirmed.

*So ordered.*