MASSING, J.
*66 This appeal arises out of a dispute between the owner of a historic property in Nantucket and his neighbors over whether the owner may remove an ancillary structure, a barn, from the premises. Over the course of the administrative proceedings and ensuing litigation, relevant officials in Nantucket have taken inconsistent positions concerning the historical significance of the barn. Ultimately, a Superior Court judge held a bench trial on three consolidated complaints for judicial review. The judge found, first, that the neighbors had *1249 standing to oppose removal of the barn and, second, that the first decision of the Nantucket historic district commission (commission), denying the owner's application to remove the barn, must stand. On the owner's appeal, we determine that the judge did not err in finding that the neighbors have standing; however, we vacate the judgment and remand with respect to the commission's first decision.
Background. 1. The property. The Seth Ray house on North Liberty Street, built in the mid-1700s, is one of the most historic structures in one of the most historic districts of old Nantucket. Seth Ray's cooper shop, where barrels were made to supply Nantucket's whale oil trade, stands on the adjacent parcel. Two structures of lesser pedigree share the same parcel with the Seth Ray house: the barn, completed in or around 1972, stands between the house and the cooper shop, and an antique shop built in the 1930s is located on the other side of the house. The barn and the antique shop were built to match their surroundings in style and materials. Tour guides walking visitors down North Liberty Street point to the Seth Ray house, the cooper shop, and the barn (despite its relatively recent construction) as representative of life in Nantucket at the turn of the Nineteenth Century.
A barn not being a necessity of life in the Twenty-first Century, even in old Nantucket, the owner[3] of the Seth Ray structures sought to remove the barn from its present location and relocate *67 it to elsewhere on the island. As the first step toward realizing this goal, the owner applied to the commission for permission.
2. The act. In 1970, the Legislature created the Nantucket historic district (St. 1970, c. 395 [the act] ), including "the land and waters comprising the town of Nantucket," id. at § 4, and the commission, id. at § 3.[4] The act was adopted "to promote the general welfare of the inhabitants of the town of Nantucket through the preservation and protection of historic buildings, places and districts of historic interest." Id. at § 2. To erect or alter any building or structure in Nantucket, an owner must first obtain a permit from the commission, in the form of a certificate of appropriateness (certificate). Id. at § 5. In deciding whether to grant a certificate, the commission must consider the effect a proposed alteration would have on the "exterior architectural features which are subject to public view from a public street, way or place." Id. A permit is also required to raze or to remove any building or structure; the act empowers the commission "to refuse such a permit for any building or structure of such architectural or historic interest, the removal of which in the opinion of said commission would be detrimental to the public interest of the town of Nantucket or the village of Siasconset." Id. at § 6. "[A]ny person aggrieved" by a decision of the commission may appeal to the board of selectmen (board), id. at § 11, and "[a]ny person or the [commission], aggrieved" by a decision of the board may appeal to the Superior Court, id. at § 12.
3. The proceedings. The commission voted three to two[5] to deny the owner's *1250 request to remove the barn. In its first decision, the commission noted that "[t]he streetscape of this area of North Liberty Street has particular historical importance and has been described as iconic," and that although the barn was built between 1972 and 1975, it "has become an important part of the historical context and streetscape of the area." Also, expressing "great concern" and uncertainty about the "potential of a new structure being placed in that space" -- the application did not disclose the owner's plans for the property after removing the barn -- the commission *68 concluded that removal of the barn "would negatively impact the historic character of the neighborhood, the historic value of the existing remaining structure and the streetscape."
The owner appealed the commission's first decision to the board. The board noted that its review was limited, and that it "must be careful not to substitute its judgment for that of the [commission]." Nonetheless, two members of the board questioned the validity of the commission's determination that removal of the barn would be "detrimental to the public interest," given that it was a relatively recent addition to the property. One board member "questioned the rationale for the decision in light of [the owner's] evidence of numerous other permitted removals of structures which were of allegedly much greater historic significance" than the barn. Town counsel suggested that a closer comparison of the other permitted removals would be necessary to determine whether the denial was arbitrary and capricious. By a vote of four to one, the board issued its first decision, remanding the matter to the commission for a further hearing to consider the "foregoing issues, questions, and comments."
Opposing the remand order, a group of neighbors, including the owners of the parcels abutting and directly across the street from the owner's property, filed a complaint in the Superior Court seeking judicial review of the board's first decision, followed shortly thereafter by an emergency motion to stay proceedings before the commission. A Superior Court judge denied the motion for a stay.
On remand from the board, the commission, with different participating membership, took an entirely different view of the barn and its relationship to its surroundings. In its second decision, the commission emphasized that the space occupied by the barn had lain vacant for forty to seventy years before the barn was built, providing the neighbors with an unobstructed view of Lily Pond, and that "[a]nother historic structure" had been moved down the street to "open up Lily Pond vistas as an example of historical context for views of Lily Pond in this immediate area." The commission further noted that the two-story barn was not built "in the same style as the original ancillary one-story structure it replaced," but instead was designed in the gambrel style of the adjacent Seth Ray house. The commission also found that the streetscape had been altered many times over the past century, that the barn "has no historically significant architectural value," and that its removal "would not negatively impact the historic character of the neighborhood, the historic value of the significant *69 remaining structure or streetscape." Further noting that any speculation regarding the owner's future plans for the property would be *1251 improper,[6] the commission voted three to two[7] to grant a certificate permitting removal and relocation.
Now the neighbors appealed to the board. In its second decision, the board expressed concern that its prior remand decision "may have involved the [b]oard's substitution of its judgment for the judgment of the [commission] members rather than a decision whether the [commission] decision was arbitrary and capricious." Noting that the Superior Court appeal of the board's first decision had not yet been adjudicated, the board voted to set aside the certificate issued in the second commission decision and instructed the commission "to revisit the application following resolution of the related appeal in Nantucket Superior Court." Both the owner and the neighbors filed new complaints in the Superior Court seeking judicial review of second board decision.
The three complaints for judicial review were consolidated for trial in the Superior Court. In her thorough written findings, rulings, and order for judgment issued after a five-day bench trial, the judge found as a threshold matter that the neighbors had standing to challenge the commission's issuance of the certificate. On the merits, the judge determined that the commission's denial of the certificate in its first decision was not arbitrary and capricious and was based on substantial evidence, and that the board's ruling in its first decision to vacate the first commission decision was improper. Consequently, she concluded that "neither [the second commission decision nor the second board decision] can stand" and annulled those decisions. The net result was that the first commission decision, which denied the owner permission to remove the barn, "remain[ed] in full force and effect." The owner appeals.
*70 Discussion. 1. Standing of the neighbors. a. Legal landscape. The act permits "any person aggrieved" by a ruling of the commission to appeal to the board, and "[a]ny person" or the commission "aggrieved" by a decision of the board to seek judicial review in the Superior Court. St. 1970, c. 395, §§ 11-12. Status as a "person aggrieved" is a prerequisite for standing to maintain an appeal under the act. Cf. 81 Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 700, 964 N.E.2d 318 (2012) ; Barvenik v. Aldermen of Newton, 33 Mass. App. Ct. 129, 131, 597 N.E.2d 48 (1992). The act, however, does not define "person aggrieved."
"A party has standing when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred." Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 293, 367 N.E.2d 796 (1977). See generally *1252 Ginther v. Commissioner of Ins., 427 Mass. 319, 322-323, 693 N.E.2d 153 (1998). Because "[w]e read the [act] in the light of the more general statutes providing for zoning, G. L. c. 40A, and for historic districts, G. L. c. 40C," Gumley v. Selectmen of Nantucket, 371 Mass. 718, 719, 358 N.E.2d 1011 (1977), we examine how the term has been construed in those related contexts.
The analysis of standing under the Historic Districts Act[8] is straightforward, as G. L. c. 40C, § 5, supplies a specific definition of the term "person aggrieved": "the applicant, an owner of adjoining property, an owner of property within the same historic district as property within one hundred feet of said property lines and any charitable corporation in which one of its purposes is the preservation of historic structures or districts." This definition was the result of an amendment to c. 40C, which previously limited the right to obtain administrative and judicial review of a decision of a historic district commission to the "applicant." Springfield Preservation Trust, Inc. v. Springfield Historical Comm'n, 380 Mass. 159, 160-161, 402 N.E.2d 488 (1980). See St. 1983, c. 429, § 1.
The c. 40C definition of "person aggrieved" thus provides standing to owners of nearby property in the same historic district as the structure under consideration, as well as to organizations dedicated to historic preservation. The Legislature recognized that these persons *71 and entities have a legitimate interest and a right to be heard to protect the historic integrity of their neighborhoods. Under c. 40C, all of the neighbors here, who live within the same historic district as the property and are either abutters or reside across the street, would have standing.
Determining who is a "person aggrieved" under G. L. c. 40A is far more complex. The Zoning Act allows a "person aggrieved" by a zoning decision to seek administrative and judicial review, see G. L. c. 40A, §§ 13 & 17, but it does not define the term. By judicial construction, "[a] 'person aggrieved' is one who 'suffers some infringement of his legal rights.' " 81 Spooner Rd., LLC, 461 Mass. at 700, 964 N.E.2d 318, quoting Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 721, 660 N.E.2d 369 (1996). The term is "not to be narrowly construed," Marotta v. Board of Appeals of Revere, 336 Mass. 199, 204, 143 N.E.2d 270 (1957), but it "requires a showing of more than minimal or slightly appreciable harm," Kenner v. Zoning Bd. of Appeals of Chatham, 459 Mass. 115, 121, 944 N.E.2d 163 (2011).
The "right or interest" asserted by the person claiming to be aggrieved must be one that the governing zoning scheme is intended to protect. 81 Spooner Rd., LLC, 461 Mass. at 700, 964 N.E.2d 318. Kenner, 459 Mass. at 120, 944 N.E.2d 163. In the context of the Zoning Act, "[d]emonstrating aggrievement requires a plaintiff to show she has suffered a specialized, cognizable injury 'not merely reflective of the concerns of the community.' " Murrow v. Esh Circus Arts, LLC, 93 Mass. App. Ct. 233, 235, 101 N.E.3d 959 (2018), quoting Denneny v. Zoning Bd. of Appeals of Seekonk, 59 Mass. App. Ct. 208, 211-212, 794 N.E.2d 1269 (2003). "The adverse effect on a plaintiff must be substantial enough to constitute actual aggrievement such that there can be no *1253 question that the plaintiff should be afforded the opportunity to seek a remedy." Kenner, supra at 122, 944 N.E.2d 163.
Concerns about the visual impact of a proposed structure on abutting property generally are insufficient to confer standing under the Zoning Act; however, these concerns may warrant standing where the local zoning bylaw specifically provides that visual consequences should be taken into account. Thus, where the local zoning bylaw required the permit-granting authority to consider "[v]isual [c]onsequences" on public ways and properties in the vicinity, an abutter had standing as a person aggrieved to challenge a proposed "towering steeple" atop a temple that would be visible from most of her property, day and night. Martin v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, 434 Mass. 141, 146-147, 747 N.E.2d 131 (2001). See *72 Monks v. Zoning Bd. of Appeals of Plymouth, 37 Mass. App. Ct. 685, 688, 642 N.E.2d 314 (1994) (where zoning bylaw protected visual character of adjacent buildings and neighborhoods, summary judgment erroneously ordered against plaintiffs who established that cellular telephone tower would have visual impact on both their home and neighborhood). By contrast, an abutter lacked standing to challenge a special permit to construct a communications tower where the local zoning bylaw did not address visual consequences. See Denneny, 59 Mass. App. Ct. at 213-215, 794 N.E.2d 1269. See also Kenner, 459 Mass. at 123, 944 N.E.2d 163 (plaintiffs not aggrieved by proposed erection of new house across the street in same footprint as existing house, but seven feet taller; although bylaw protected visual interests, judge found that increased height "would have a de minimis impact on the [plaintiffs'] view of the ocean").
In summary, although the act, the Zoning Act, and the Historic Districts Act all use the term "person aggrieved," the legally cognizable injuries under each are not identical. See Standerwick v. Zoning Bd. of Appeals of Andover, 447 Mass. 20, 28, 849 N.E.2d 197 (2006) (while Zoning Act and comprehensive permit statute, G. L. c. 40B, both refer to person aggrieved, the interests they protect differ). If anything, the interests protected by the act here are more closely aligned with those protected by the Historic Districts Act. We turn next to the act itself and the judge's findings thereunder.
b. Standing under the act. Standing was a contested issue at trial. The judge took a view and heard substantial testimony regarding the North Liberty Street neighborhood, the property, the barn, and the injuries that the neighbors alleged would attend its removal. All of the neighbors testified about the high value they placed on the historic character of their neighborhood when seen from their homes and from the street when they drive, bicycle, walk, or run by their homes -- and their concern that removal of the barn would damage the neighborhood's historic integrity. The judge concluded that the act required consideration of the visual impact of proposed removal, and that, as abutters, each of the neighbors "qualifie[d] as a 'person aggrieved' because the barn's removal would significantly impact the visual character and quality of their view." The issue of aggrievement is a question of fact for the judge, and the judge's ultimate findings on the issue will not be disturbed unless clearly erroneous. See Kenner, 459 Mass. at 119, 944 N.E.2d 163 ; Marashlian, 421 Mass. at 722, 660 N.E.2d 369 ; Talmo v. Zoning Bd. of Appeals of Framingham, 93 Mass. App. Ct. 626, 630, 107 N.E.3d 1188 (2018).
*73 *1254 The act is intended to protect the visual consequences of an alteration to the "exterior architectural features" of an existing building or structure -- to the extent that those features are "subject to public view from a public street, way or place." St. 1970, c. 395, § 5. It also protects buildings or structures "of such architectural or historic interest" that, in the commission's opinion, their removal "would be detrimental to the public interest of the town of Nantucket or the village of Siasconset." St. 1970, c. 395, § 6. That is, the act protects visual interests that are connected with preserving the historic integrity of Nantucket and its neighborhoods.
Focusing on the act's stated interest in protecting and preserving historical buildings and exteriors only to the extent that they are visible from public ways, the owner contends that the neighbors' interest in their private views are not protected, or, alternatively, that any diminution of the neighbors' views does not affect them any differently than it affects the general public. In Higgins v. Department of Envtl. Protection, 64 Mass. App. Ct. 754, 754-755, 757, 835 N.E.2d 610 (2005), the plaintiff owners of office property abutting a proposed waterfront hotel in Newburyport sought an adjudicatory hearing to challenge a waterways license approved by the Department of Environmental Protection. The administrative law judge dismissed the challenge on the ground that the plaintiffs lacked standing, a determination that we affirmed on certiorari review. Id. at 755, 757, 835 N.E.2d 610. Although the plaintiffs were able to demonstrate that "the impact on their views from their private offices differ[ed] in kind or magnitude from that of the general public," ibr.US_Case_Law.Schema.Case_Body:v1">id. at 757, 835 N.E.2d 610,[9] the waterways statute specified that it was concerned only with waterfront views from public places, such as parks and esplanades. Id. In addition, the administrative law judge rejected the plaintiffs' claim that they used the public areas more frequently than the general public because of the proximity of their workplace, and we upheld this interpretation of the regulation as not being patently wrong, unreasonable, arbitrary, or capricious. Id. at 758, 835 N.E.2d 610.
Unlike the views from the offices in Higgins, the views that the neighbors enjoy coincide with the public views that the act is intended *74 to protect. Moreover, the neighbors' regular use and enjoyment of the public ways on which their homes are situated is patently more intensive than the office workers' incidental use of the nearby public waterfront areas in Newburyport. The neighbors' claimed injuries are "personal to [them], not merely reflective of the concerns of the community." Denneny, 59 Mass. App. Ct. at 211, 794 N.E.2d 1269.
In addition to their visual interests, as owners of property located in the Nantucket historic district, the neighbors have "a legitimate interest in preserving the integrity of the district" in which both their properties and the barn are located. Murray v. Board of Appeals of Barnstable, 22 Mass. App. Ct. 473, 476, 494 N.E.2d 1364 (1986). See Harvard Sq. Defense Fund, Inc. v. Planning Bd. of Cambridge, 27 Mass. App. Ct. 491, 495, 540 N.E.2d 182 (1989) (denying standing to parties who did not own or occupy property in same zoning district as proposed buildings). This interest is particularly relevant in the context of the Historic Districts Act. See *1255 G. L. c. 40C, § 5 ; Kelley v. Cambridge Historical Comm'n, 84 Mass. App. Ct. 166, 180 n.25, 993 N.E.2d 1228 (2013) (plaintiffs unable to rely on c. 40C "for standing as owners of property within the same historic district, because ... no historic district has ever been established in the area," and they did not otherwise qualify as aggrieved persons under G. L. c. 40C, § 5 ). While this interest may carry less weight under the Zoning Act, see Denneny, 59 Mass. App. Ct. at 215-216, 794 N.E.2d 1269, it supports the neighbors' standing under the act at issue here.
The act protects the historic integrity of the public views of all of Nantucket, including where the neighbors reside. They sufficiently demonstrated that the removal of the barn would have a substantial effect on the historical character of their neighborhood's "streetscape" (in the commission's parlance) and their own enjoyment of it. That is, they alleged "a particularized harm to [their] own property and a detrimental impact on the neighborhood's visual character." Kenner, 459 Mass. at 121, 944 N.E.2d 163. Moreover, the neighbors' claim of aggrievement is substantial enough to confer on them a right to heard. Under the owner's reading of the act, no property owner in Nantucket other than the applicant would ever have standing to challenge a decision of the commission. The act's use of the term "person aggrieved" rather than "applicant" indicates that standing is not so limited. See *75 Springfield Preservation Trust, Inc., 380 Mass. at 160-161, 402%20N.E.2d%20488">402 N.E.2d 488.[10]
The owner also refers us to a handful of decisions of the Land Court and the Appellate Division of the District Court Department in which residents of neighborhoods were denied standing to challenge a decision of a historic district commission. All of those cases concerned parties that were at some remove from the challenged development; none of those cases involved an abutter. See Kelley, 84 Mass. App. Ct. at 180, 993 N.E.2d 1228 (plaintiffs, who were not abutters but lived "in close proximity" to church with municipal landmark status, lacked standing to challenge alteration to church under landmark regulations).
In Kenner, where the neighbor across the street was denied aggrieved person status under the Zoning Act because the judge found that an addition that would raise the challenged property's roof line by seven feet was de minimis, the appellate court could not say that the *1256 trial judge's decision was clearly erroneous. 459 Mass. at 123, 944 N.E.2d 163. Here, the owner proposes to remove an entire building, which is more than de minimis. See Butts v. Zoning Bd. of Appeals of Falmouth, 18 Mass. App. Ct. 249, 253, 464 N.E.2d 108 (1984) (abutter who established that his ocean view would be "completely blocked" by proposed remodeling of neighbor's home had standing as person aggrieved). The owner here has not shown that the trial judge's decision was clearly erroneous. Thus, we agree with the judge's determination that the neighbors are persons aggrieved under the act.
2. Decisions of the commission and the board. Before we review the judge's determination that the remand order in the first board decision was improper, and that the first commission decision, denying the owner permission to remove the barn, must therefore stand, we address a significant threshold issue. An administrative *76 remand order is generally viewed as interlocutory and not appealable. See Wrentham v. West Wrentham Village, LLC, 451 Mass. 511, 514-515, 887 N.E.2d 210 (2008) ; East Longmeadow v. State Advisory Comm'n, 17 Mass. App. Ct. 939, 940, 457 N.E.2d 636 (1983). The owner contends that the judge should not have considered the propriety of the first board decision, as it was not a final order. Indeed, the same logic might apply to the second board decision, which also remanded the application to the commission for further consideration, albeit with the further instruction that the commission await the resolution of the Superior Court litigation. Given the unusual circumstances of this case, where the unorthodox remand order in the second board decision was followed by the adjudication of three consolidated Superior Court complaints, culminating in a judicial remand order requiring the commission to deny the certificate, reaching the merits is the prudent course of action. Cf. Federman v. Board of Appeals of Marblehead, 35 Mass. App. Ct. 727, 730, 626 N.E.2d 8 (1994) ("If an order of remand allows the administrative tribunal no leeway, the order takes on the character of finality, and an appeal is in order").
In reviewing the decisions of the commission and the board, we apply a standard "analogous to that governing exercise of the power to grant or deny special permits." Gumley, 371 Mass. at 719, 358 N.E.2d 1011. "The decision of the commission cannot be disturbed either by the board or by the court 'unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary.' " Id. at 724, 358 N.E.2d 1011, quoting MacGibbon v. Board of Appeals of Duxbury, 369 Mass. 512, 515-516, 340 N.E.2d 487 (1976).
The trial judge concluded that the first commission decision was sufficient on its face, supported by substantial evidence, and not arbitrary or capricious. See Warner v. Lexington Historic Dists. Comm'n, 64 Mass. App. Ct. 78, 82-83, 831 N.E.2d 380 (2005). Because, in her view, the first commission decision was valid, the judge concluded that the board's remand order in its first decision was not. It is true that the act "confers on the commission a substantial measure of discretionary power with respect to 'the appropriateness of exterior architectural features' and congruity to historic aspects of the surroundings and the district." Gumley, 371 Mass. at 723, 358 N.E.2d 1011. On review, the board does not have the same discretionary power as the commission; the purpose of the board's review is "either to confine the power of the commission within authorized limits, or to prevent its abuse, for example, by decisions based on peculiar individual tastes." Id.
*77 That said, it was within the board's discretion to remand the application to the commission to consider additional facts to inform its deliberations, to provide additional explanation, and thus to ensure a decision that is not arbitrary or capricious.[11] The possibility that the commission *1257 may have taken inconsistent positions on similar proposals, without exploring or explaining the inconsistency, is a particularly relevant concern. See Steamboat Realty, LLC v. Zoning Bd. of Appeal of Boston, 70 Mass. App. Ct. 601, 606, 875 N.E.2d 521 (2007) (affirming order denying request for height variance where board had "well-established interest in preserving the architectural integrity of a historic neighborhood" and "a record of furthering such an interest by consistently denying all requests for a height variance"); Fafard v. Conservation Comm'n of Reading, 41 Mass. App. Ct. 565, 568, 672 N.E.2d 21 (1996) (agency acts arbitrarily when "the basis for action is not uniform, and, it follows, is not predictable"). We discern no error of law or abuse of discretion in the first board decision, which remanded the matter for further consideration.
The second commission decision, finding the barn not to be architecturally or historically significant "upon further consideration of the prior record and consideration of the new materials," like the first commission decision, appears facially valid. But the irregularities in the proceedings noted by the trial judge -- the chair's ex parte communications, her choice of one associate commissioner over another to participate in the decision, and the chosen associate commissioner's switch in vote, see notes 5 and 7, supra-- raises the specter that the commission may have considered improper factors or acted for reasons outside of its mandate. See Clear Channel Outdoor, Inc. v. Zoning Bd. of Appeals of Salisbury, 94 Mass. App. Ct. 594, 599-600, 116 N.E.3d 1219 (2018) ; Fafard, 41 Mass. App. Ct. at 568, 672 N.E.2d 21. In these circumstances, so much of the second board decision that set aside the second commission decision for still further consideration appears to us to be a lawful exercise of the board's authority.[12] As a result, the commission *78 was to have one more "opportunity to exercise its discretionary power, applying the statutory criteria." Gumley, 371 Mass. at 725, 358 N.E.2d 1011.
Accordingly, the judgment is vacated. A new judgment shall enter affirming the second board decision to the extent that it set aside the certificate and remanded the owner's application to the commission. The commission shall consider any application in accordance with the act and consistent with this opinion.
So ordered.

The application was filed by then-owner defendant Michael J. Maitino, working together with real estate developer defendant Jeffery Kaschuluk and defendant Westbay Development, Inc., a corporation owned and controlled by Kaschuluk. Kaschuluk purchased the property from Maitino at some point during the course of the litigation.

The act repealed and replaced St. 1955, c. 601, which had divided Nantucket into two historic districts.

The majority consisted of commissioner John McLaughlin and associate commissioners Jascin Leonardo-Finger and Abigail Camp. The chair of the commission, Linda F. Williams, and commissioner Ray Pohl made up the minority. The trial judge found that Williams had engaged in "entirely improper" ex parte communications with the owner prior to the hearing.

Under the act, the owner would need to apply to the commission for another certificate to erect any replacement building. St. 1970, c. 395, § 5.

Commissioner Linda F. Williams and commissioner Ray Pohl, who had voted in the first commission decision to approve removal, were joined by associate commissioner Abigail Camp, who had voted against removal in the first decision, to form the new majority approving removal in the second commission decision. See note 5, supra. The minority in the second commission decision was made up of commissioner John McLaughlin, who had voted against removal in the first decision, and commissioner Diane Coombs, who had not participated in the first decision. The trial judge found it "more than troubling" that the chair, Williams, had assigned Camp to be the fifth commissioner to hear the case on remand instead of associate commissioner Jascin Leonardo-Finger, who had seniority and would have been chosen in the ordinary course.

The Historic Districts Act enables cities and towns to establish their own historic districts, with discretion to determine the scope of the district and the precise interests to protect. See G. L. c. 40C, § 3. As the Legislature created and has amended the Nantucket historic district through special acts over the years, Nantucket has never needed to resort to using c. 40C.

The relevant regulations defined "aggrieved person" as someone who "may suffer an injury in fact, which is different either in kind or magnitude, from that suffered by the general public" and within the scope of interests protected by the waterways statute. Higgins, 64 Mass. App. Ct. at 756, 835 N.E.2d 610, quoting 310 Code Mass. Regs. § 9.02 (2000).

At the other extreme, the neighbors cite cases from other jurisdictions that permit a broad range of persons with interests in the integrity of protected districts to challenge development that might adversely affect those places. See, e.g., Sierra Club v. Jewell, 764 F.3d 1, 5 (D.C. Cir. 2014) (conferring standing on persons "who view and enjoy the [Blair Mountain, West Virginia,] Battlefield's aesthetic features, or who observe it for purposes of studying and appreciating its history" to litigate its listing in National Register of Historic Places to prevent surface coal mining); Dover Historical Soc'y v. Dover Planning Comm'n, 838 A.2d 1103, 1114 (Del. 2003) (standing conferred on landowner residents of Historic District of Dover based on their "enforceable right in the 'aesthetic benefit' derived from the Historic District as a whole"). We need not adopt the neighbors' very broad concept of standing to uphold the judge's finding that they have asserted a cognizable interest in the fate of the barn.

Neither Gumley nor § 11 of the act supports the neighbors' bald assertion that the board "had only two choices: either affirm [the first commission decision] or annul it. Nothing else."

We are not persuaded by the owner's argument that the second board decision is invalid because it was decided by a two-to-one vote with only three of the five board members participating. The act requires the board's decisions to be "determined by a majority vote of the members of the board," St. 1970, c. 395, § 11, but it contains no requirement that all members of the board participate in the board's decisions. "In the absence of statutory restriction the general rule is that a majority of a council or board is a quorum and a majority of the quorum can act." Clark v. City Council of Waltham, 328 Mass. 40, 41, 101 N.E.2d 369 (1951), quoting Merrill v. Lowell, 236 Mass. 463, 467, 128 N.E. 862 (1920).